1817.
Duvall<br>v.<br>Craig.

—————

(COMMON LAW.)

DUVALL v. CRAIG et. al.

Variances between the writ and declaration are matters pleadable in abatement only, and cannot be taken advantage of upon general demurrer to the declaration.

A trustee is, in general suable only in equity; but if he chooses to bind himself by a personal covenant he is liable at law for a breach thereof, although he describe himself as covenanting as trustee.

1817.

Duvall
v.
Craig.

Where the parties to a deed covenanted severally against their own acts and incumbrances, *and* also to warrant and defend against their own acts, and those of all other persons, with an indemnity in lands of an equivalent value in case of eviction; it was held that these covenants were independent, and that it was unnecessary to allege in the declaration any eviction, or any demand or refusal to indemnify with other lands, but that it was sufficient to allege a prior incumbrance by the acts of the grantors, &c., and that the action might be maintained on the first covenant in order to recover pecuniary damages.

Where the grantors covenant generally against incumbrances made by them, it may be construed as extending to *several*, as well as *joint* incumbrances. No profert of a deed is necessary where it is stated only as inducement, and where the plaintiff is neither a party nor privy to it.

An averment of an eviction under an elder title is not always necessary to sustain an action on a covenant against incumbrances; if the grantee be unable to obtain possession in consequence of an existing possession or seisin by a person claiming and holding under an elder title, it is equivalent to an eviction, and a breach of the covenant.

ERROR to the circuit court for the district of Kentucky.

The *capias ad respondendum* issued in this case was as follows: " The United States of America to the marshal of the Kentucky district, Greeting. You are hereby commanded to take John Craig, Robert Johnson, and Elijah Craig, if they be found within your bailiwick, and them safely keep so that you have their bodies before the judge of our district court, at the capitol in Frankfort, on the first Monday in March next, to answer William Duvall, a citizen of the state of Virginia, of an action of covenant; damages fifty thousand dollars; and have then and there this writ. In testimony whereof, Harry Innes, Esq. judge of our said court, hath caused the

seal thereof to be hereunto affixed this 22d day of January, 1804, and of our independence the 28th. Thomas Turnstall, C. D. C."

Whereupon the plaintiff declared against John Craig, Robert Johnson, and Elijah Craig, in covenant, for that whereas, on the 28th day of February, 1795, &c. the said John, and the said Robert and Elijah, as trustees to the said John, by their certain indenture of bargain and sale, &c., did grant, bargain, sell, alien, and confirm unto the said plaintiff, by the name of William Duvall, of the city of Richmond and state of Virginia, his heirs and assigns for ever, a certain tract of land lying and being in the state of Kentucky, &c., together with the improvements, water courses, profits, and appurtenances whatsoever, belonging, or in any wise appertaining; and the reversion and remainder, and remainders and profits, thereof; and all the estate, right, title, property, and demand of them, the said John Craig, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, of, in, and to the same, to have and to hold the lands thereby conveyed with all and singular the premises, and every part and parcel thereof to the said William Duvall, his heirs and assigns for ever, to the only proper use and behoof of him, the said William, his heirs and assigns for ever; and the said John Craig, and Robert Johnson, and Elijah Craig, trustees to the said John Craig, for themselves, their heirs, executors, and administrators, did covenant, promise, and agree, to and with the said William Duvall, his heirs and assigns, that the premises before mentioned,

1817.

Duvall
v.
Craig.

then were, and for ever after should be, free of and from all former and other gifts, bargains, sales, dower, right and title of dower, judgments, executions, titles, troubles, charges, and incumbrances whatsoever done, or suffered to be done by them, the said John Craig, and Sarah his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, as by the said indenture will more at large appear. And the said William, in fact, saith, that the premises before mentioned were not, then and there, free of and from all former gifts, grants, bargains, sales, titles, troubles, charges, and incumbrances whatsoever done and suffered to be done by the said John Craig, and Sarah his wife, and Robert Johnson and Elijah Craig, trustees to the said John Craig. But, on the contrary, the said John Craig and Robert Johnson, theretofore, to wit, on the 11th day of May, 1785, assigned the place and certificate of survey of said land to a certain John Hawkins Craig, by virtue of which said assignment, Patrick Henry, governor of the commonwealth of Virginia, granted the said land to said John Hawkins Craig, and his heirs for ever, by letters patent, dated the 16th day of September, 1785, and now here shown to the court, the date whereof is the day and year aforesaid, which said patent to the said John Hawkins Craig, on the day and year first aforesaid, at the district aforesaid, was in full force and virtue, contrary to the covenant aforesaid, by reason of which said assignment, patent, and incumbrance, the said William hath been prevented from having and enjoying all or any part of the premises above men-

tioned. And thereupon the said William further saith, that the defendants aforesaid, although often requested, have not kept and performed their covenant aforesaid, &c. To which declaration there was a general demurrer, and joinder in demurrer, and a judgment thereupon in the circuit court for the defendants.

The indenture referred to in the plaintiff's declaration is in the following words: "This indenture, made this 28th day of February, 1795, between John Craig, and Sarah, his wife, and Robert Johnson and Elijah Craig, trustees for the said John Craig, all of the state of Kentucky, of the one part, and William Duvall of the city of Richmond, and state of Virginia, of the other part, witnesseth, that the said John Craig, for and in consideration of the sum of two thousand pounds, current money of Kentucky, to him, the said John Craig, in hand paid, the receipt whereof they do hereby acknowledge and for ever acquit and discharge the said William Duvall, his heirs, executors, and administrators, have granted, bargained and sold, aliened and confirmed, and by these presents do grant, bargain and sell, alien and confirm, unto the said William Duvall, his heirs and assigns for ever, a certain tract of land lying and being in the state of Kentucky, and now county of Scott, formerly Fayette, on the waters of the Ohio river, below the Big Bone lick creek, it being the same lands that the said John Craig covenanted by a writing obligatory, sealed with his seal, and dated the second day of December, 1788, to convey to Samuel M'Craw, of the city of Rich-

mond, and which said writing the said Samuel M'Craw, on the back thereof, endorsed and transferred the same on the 27th day of February, 1789, to William Reynolds, and which is bounded as follows: beginning at a poplar and small ash corner, to William Bledsoe, about thirty miles nearly a south course from the mouth of Licking; thence S. 15, E. 520 poles with the said Bledsoe's line, crossing four branches to an ash and beech; thence S. 75, W. 150 poles, to a hickory and beech; thence S. 15, E. 400 poles, crossing a branch to a sugar tree and beech, near a branch; thence S. 75. W. 87 poles, to three beeches, corner to Robert Sanders; thence with his line S. 15 E. 600 poles, crossing two branches to a poplar and sugar tree; thence S. 60 poles to a sugar tree and beech; thence west 217⁴ poles, crossing five branches to a large black walnut; thence north 1580 poles, crossing a large creek and four branches to a sugar tree and ash; thence E. 2006 poles, crossing five branches to the beginning; containing twenty thousand four hundred and forty acres, together with the improvements, water-courses, profits and appurtenances whatsoever to the same belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, and profits thereof, and all the estate, right, title, property, and demand, of them, the said John Craig, and Sarah, his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, of, in, and to the same, to have and to hold the land hereby conveyed, with all and singular the premises and every part and parcel thereof, to the said William Duvall, his heirs and

assigns for ever, to the only proper use and behoof of him, the said William Duvall, his heirs and assigns for ever. And the said John Craig, and Sarah, his wife, and Robert Johnson and Elijah Craig, trustees to the said John Craig, for themselves, their heirs, executors, and administrators, do covenant, promise, and agree, to and with the said William Duvall, his heirs and assigns, by these presents, that the premises before mentioned now are, and for ever after shall be, free of and from all former and other gifts, grants, bargains, sales, dower, right, and titles of dower, judgments, executions, title, troubles, charges, and incumbrances whatsoever done, or suffered to be done, by the said John Craig, and Sarah, his wife, and Robert Johnson and Elijah Craig, trustees for the said John Craig. And the said John Craig, and Sarah, his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, and their heirs, all and singular the premises hereby bargained and sold, with the appurtenances, unto the said William Duvall, his heirs and assigns, against him the said John Craig, and Sarah, his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, and their heirs, and all and every persons whatsoever, do and will warrant and for ever defend with this warranty, and no other; to wit, that if the said land, or any part thereof, shall at any time be taken by a prior legal claim, or claims, that then and in such case they, the said John Craig, and Sarah, his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, and their heirs, shall make good to the said William Duvall

and his heirs, such part or parts so lost, by supplying to his the said William Duvall's use, other lands in fee of equal quantity and quality, to be adjudged of by two or more honest, judicious, impartial men, mutually chosen by the parties for ascertaining the same. In witness whereof the said John Craig, and Sarah, his wife, and Robert Johnson, and Elijah Craig, trustees for the said John Craig, have hereunto set their hands and seals, the date first in this indenture written.

> JOHN CRAIG.       (L. S.)
> SARAH CRAIG.      (L S.)
> ROBERT JOHNSON,
> Trustee for John Craig.   (L. S.)
> ELIJAH CRAIG.
> Trustee for John Craig.   (J S.)

Signed, sealed, and deliver- ⎰
    ed in presence of      ⎱
  Charles W. Byrd,
  T. S. Threshly.
  Thomas Corneal.
  Christopher Greenup.
  Robert Saunders.
  James Taylor.
  Jos. Wiggleworth.
  George Christy."

Feb. 8th.     Mr. *B. Hardin*, for the plaintiff, made the following points : 1. That the variance between the writ and declaration, as to the description of the parties,

was immaterial. Naming two of the defendants as *trustees*, is only *descriptio. personæ*, and could not alter the nature of the covenant. 2. Judgment was rightly rendered against the defendants in their individual capacity. 3. It was unnecessary to aver a demand and refusal of other lands of equivalent value as an indemnity, this covenant not being sued upon; and the action might be maintained upon the first covenant against incumbrances by the parties to the deed. 4. That the breach alleged in the declaration was sufficient. 5. That it was unnecessary to make profert of the assignment described in the breach.

Mr. *Talbot*, contra. 1. The variance between the writ and declaration is a substantial variance, and is therefore available on general demurrer. The parties, Robert Johnson, and Elijah Craig, are not sued in their fiduciary character; but they are declared against as *trustees to the said John*, who is the *cestui que trust*, and could not be joined in an action at law with the trustees. They covenanted *as trustees*, and a court of equity is the proper forum in which they ought to be sued. 2. Having covenanted as trustees, no individual judgment could be rendered against them. 3. Supposing the trustees to be liable in their individual capacity, the two covenants in the deed are to be construed in connexion; the clause as to an indemnity with other lands of an equivalent value, ought to be applied to both; and the declaration is fatally defective in not alleging a demand and refusal to indemnify with other lands. 4. The cove-

1817.

Duvall
v.
Craig.

nant, on which the breach is assigned, is against the *joint* and not the *several* incumbrances of the parties to the deed. The incumbrance alleged is the act of two of the parties only. 5. There is no profert of the assignment to John Hawkins Craig, by which the incumbrance was created; nor is it shown to have been made for a valuable consideration. 6. There is no averment of an eviction of the plaintiff under the assignment, which was absolutely necessary to sustain the action on the covenant against incumbrances.

Mr. *M. B. Hardin*, in reply. 1. The variance between the writ and declaration could only be taken advantage of by a plea in abatement. 2. As between a trustee and the *cestui que trust* a court of chancery is the only jurisdiction; but trustees may bind themselves individually so as to be amenable at law. The present case is not that of a covenant binding the trustees, only as to the trust fund in their hands; but they covenant *for themselves, their heirs, executors, &c.* The mere description as trustees, therefore, becomes immaterial. 3. The covenants are independent, and the action may be maintained to recover pecuniary damages, without alleging an eviction and demand of other lands of equivalent value. 4. Where there is any doubt, a covenant is to be construed most strongly against the covenanters; and in a case of this nature, the law considers an act done by one or more of the covenanters as a breach of the covenant. 5. No profert of the assignment was necessary, because the action was not founded

upon it, nor was the plaintiff a party or privy to it; and the omission of profert was ground of special demurrer only.

Mr. Justice STORY delivered the opinion of the court.

Several points have been argued in this case, upon which the opinion of the court will be now pronounced. In the first place, it is stated, that a material variance exists between the writ and declaration, of which (being shown upon oyer) the court, upon a general demurrer to the declaration, are bound to take notice; and if so, it is fatal to the action. The supposed variance consists in this, that in the writ all the defendants are sued by their christian and surnames only; whereas, in the declaration, the deed on which the action is founded is averred to be made by the defendant, John Craig, and by the other defendants, Robert Johnson and Elijah Craig, " as *trustees* to the said John," and the covenant on which the breach is assigned, is averred to be made by the said John Craig, and Robert Johnson and Elijah Craig, " *trustees* to the said John." The argument is, that the writ is founded upon a personal covenant, and the declaration upon a covenant in *auter droit*, upon which no action lies at law; or if any lies, the writ must conform in its language to the truth of the case. It is perfectly clear, however, that the exception, even if a good one, cannot be taken advantage of upon general demurrer to the declaration, for such a demurrer is in bar to the action; whereas variances between the writ and declaration are matters pleadable in abatement only.

1817.

Duvall
v.
Craig.

But there is nothing in the exception itself.    A
trustee, merely as such, is, in general, only suable
in equity.    But if he chooses to bind himself by a
personal covenant, he is liable at law for a breach
thereof in the same manner as any other person,
although he describe himself as covenanting as
trustee; for, in such case, the covenant binds him
personally, and the addition of the words "as
trustee" is but matter of description to show the
character in which he acts for his own protection,
and in no degree affects the rights or remedies of
the other party.    The authorities are very elaborate
on this subject.    An agent or executor who cove-
nants in his own name, and yet describes himself as
agent or executor, is personally liable, for the obvious
reason that the one has no principal to bind, and
the other substitutes himself for his principal.[a]

a  Where a person acts as agent
for another, if he executes a deed
for his principal, and does not
mean to bind himself personally,
he should take care to execute
the deed in the name of his prin-
cipal, and state the name of his
principal only, in the body of the
deed.  White v. Cuyler, 6 *Term
Rep* 176.    Wilkes v. Back, 2
*East*, 142.    The usual and appro-
priate manner is to sign the deed
"A. B. by C. D., his attorney."
If, instead of pursuing this course,
the agent names himself in the
deed, and covenants in his own
name, he will be personally liable
on the coven nts, notwithstanding

he describes himself as agent.
There are numerous cases to be
found in the books illustrative of
this doctrine decided in the text.
Thus in Appleton v. Birks, (5
*East*, 148.,) where the defendant
entered into an agreement, under
seal, with the plaintiff, by the name
of T. B. of, &c., "for, and on the
part and behalf of the right ho-
nourable Lord Viscount Rokeby,"
and covenanted for himself, his
heirs, executors, &c., "on the
part and behalf of the said Lord
Rokeby," and executed the agree-
ment in his own name, it was held,
that he was personally liable on
the covenant.  So where a com-

The reasoning upon this point disposes, also, of the second made at the argument, viz., that the covenant being made by Robert Johnson and Elijah Craig, *as trustees*, no individual judgment can be rendered against them. It is plain that the judgment is right, and, indeed, there could have been no other judgment rendered, for at law a judgment against a trustee in such special capacity is utterly unknown.

Having answered these minor objections, we may now advance to the real controversies between the

mittee for a Turnpike corporation contracted under their own hands and seals, describing themselves as a committee, they were held personally responsible. Tibbetts v. Walker, 4 *Mass. Rep.* 595. So where a person signed a promissory note in his own name, describing himself as guardian, he was held bound to the payment of the note in his personal capacity. Thatcher v. Dinsmore, 5 *Mass. Rep.* 299. Foster v. Fuller, 6 *Mass. Rep.* 53. *Chitty on Bills,* (Story's Ed.,) 40., and note *ibid.* So where administrators of an estate, by proper authority from a court, sold the lands of their intestate, and covenanted in the deed "in their capacity as administrators," that they were seized of the premises, and had good title to convey the same; that the same were free of all incumbrances, and that they would warrant and defend the same against the lawful claims of all persons; it was held, that they were personally responsible. Sumner v. Williams, 8 *Mass. Rep.* 162. Thayer v. Wendall, 1 *Gallis,* 37. In respect to public agents a distinction has been long asserted, and is now generally established; and, therefore, if an agent of the government contract for their benefit, and on their behalf, and describe himself as such in the contract, he is held not to be personally responsible, although the terms of the contract might, in cases of a mere private nature, involve him in a personal responsibility. Macbeath v. Haldimand. 1 *Term Rep.* 172. Unwin v. Wolseley, 1 *Term Rep.* 674. Myrtle v. Beaver, 1 *East,* 135. Rice v. Shute, 1 *East,* 579. Hodgdon v. Dexter, 1 *Cranch,* 363. Jones v. Le Tombe, 3 *Dall.* 384. Brown v. Austin, 1 *Mass. Rep.* 208. Freeman v. Otis, 9 *Mass. Rep.* 272. Sheffield v. Watson, 3 *Caines,* 69.

parties. It is contended, that the two covenants in the deed are so knit together, that they are to be construed in connexion, so that the clause as to an indemnity with other lands, in case of an eviction by a prior legal claim, is to be applied as a restriction to both covenants; and if so, then the action cannot be sustained, for the declaration does not allege any eviction, or any demand or refusal to indemnify with other lands. There is certainly considerable weight in the argument. It is not unreasonable to suppose that then the parties had provided a specific indemnity for a prior claim, they might mean to apply the same indemnity to all the other cases enumerated in the first covenant. But something more than the mere reasonableness of such a supposition must exist to authorize a court to adopt such a construction. The covenants stand distinct in the deed, and there is no incongruity or repugnancy in considering them as independent of each other. The first covenant being only against the acts and incumbrances under the parties to the deed, which, they could not but know, they might be willing to become responsible to secure its performance by a pecuniary indemnity; the second including a warranty against the prior claims of strangers also, of which the parties might be ignorant, they might well stipulate for an indemnity only in lands of an equivalent value. The case ought to be a very strong one, which should authorize a court to create, by implication, a restriction which the order of the language does not necessarily import or justify. It ought to be one in which no judicial doubt could

exist, of the real intention of the parties to create such a restriction. It cannot be pronounced that such is the present case; and this objection to the declaration cannot, therefore, be sustained.

The remaining objections turn upon the sufficiency of the breach alleged in the declaration. It is contended, that the covenant on which the breach is assigned is against the joint, and not the several acts and incumbrances of the parties to the deed, and that, therefore, the breach, which states an assignment by John Craig and Robert Johnson only, is wholly insufficient. It is certainly true that, in terms, the covenant is against the acts and incumbrances of all the parties, and the words " every of them" are not found in the deed. Some of the incumbrances, however, within the contemplation of the parties are not of a nature to be jointly created ; as, for instance, the incumbrance of dower and title of dower. This very strongly shows that it was the intention of the parties to embrace in the covenant *several*, as well as *joint* acts and incumbrances. There is also a reference in the premises of the deed to a covenant for a conveyance previously made by John Craig to Samuel M'Craw, against which it must have intended to secure the grantees; and if so, it fortifies the construction already stated. If, therefore, the point were of a new impression, it would be difficult to sustain the reasoning, which would limit the covenant to the joint acts of all the grantors; and there is no authority to support it. On the contrary, Meriton's case, though stated with some difference by the several reporters, seems to

us completely to sustain the position that a covenant of this nature ought to be construed as including *several*, as well as *joint* incumbrances, and has certainly been so understood by very learned abridgers. *Meriton's Case. Noy*, 86. S. C. *Popham*, 200. S. C. *Latch.* 161. *Bac. Abr. Covenant*, 77. *Com. Dig. Condition*,(E.) This objection, therefore, is overruled.[b]

*b* It may not, perhaps, be useless to the learned reader to state the substance of Meriton's case as given in the various reporters. In *Noy's Reports*, 86., the case is thus succinctly given; "A. and B. lease to M. for years, and covenant that he may claim without disturbance, interruption, or incumbrance *by them*, and an obligation was made for performance, &c. A. makes another lease to C. who enters, and M. brought debt, &c.; (on the obligation,) and by the court, it is well. for the covenant is broken, and 'THEM' shall not be taken jointly only, but *severally* also. In *Latch*, 161., the case stands as follows: "Debt upon an obligation. Two make a lease for years by indenture, and covenant that the lessee should not be disturbed, nor any incumbrance made *by them*; one of the lessors made a lease to a stranger, who disturbed, &c. The condition was to perform covenants. And it was agreed by DODDERIDGE, JONES, and WHITLE, to be a breach of the condition, for '*them*' shall not be taken jointly; but if either of them disturb the lessee, it is a breach of the condition." The case, therefore, as stated in both of these reports, is substantially the same. But in *Popham's Reports*, 200., it is reported somewhat differently. It is there stated to be an action of covenant, upon a covenant in an indenture between the plaintiffs and their lessors, whereby the lessors covenant *to discharge them of all incumbrances done by them, or any other person*, and the plaintiffs assign for breach that *one of the lessors* had made a lease. It was moved in arrest of judgment, that the breach was not well-laid, "because it is only laid to be done by one of them, and the covenant is to discharge them of incumbrances *done by them*, which shall be intended joint incumbrances. DODDERIDGE, J. The covenant goes as well to incumbrances done severally as jointly, for it is of all incumbrances done *by them or any other person*; and so was the opinion of all the other

Another exception is, that there is no profert of the assignment described in the breach, nor is it shown to have been made for a valuable consideration. Various answers have been given at the bar to this exception; and without deciding on others, it is a sufficient answer that the plaintiff is neither a party nor privy to the assignment, nor conusant of the consideration upon which it was made, and therefore is not bound to make a profert of it, or show the consideration upon which it was made.

The last exception is, that the breach does not set forth any entry or eviction of the plaintiff under the assignment and patent to John Hawkins Craig. Assuming that an averment of an entry and eviction under an elder title be in general necessary to sustain an action on a covenant against incumbrances, (on which we give no opinion,) it is clear that it cannot be always necessary. If the grantee be unable to obtain possession in consequence of an existing possession or seisin by a person claiming and holding under an elder title, this would certainly be equivalent to

justices ; and, therefore, the exception was overruled." From this last report, it would seem that the covenant was against incumbrances, not only of the lessors, but of *other persons*, and it might, at first view, be thought that some stress was laid by the court upon the last words. But upon a careful consideration, even supposing (what may well be doubted) that Popham's is the more correct report, it would not seem that the latter words, "any other person," could be properly held to embrace the lessees, or either of them; for " other" is used as exclusive of them ; and, therefore, the cause must have turned substantially upon the import of the preceding words, " of them," i. e. whether embracing several as well as joint incumbrances. In this view all the reports are consistent, and put the case upon the real point in controversy.

an eviction and a breach of the covenant. In the case at bar the breach is assigned in a very inartificial and lax manner; but it is expressly averred, that the assignment and patent to John Hawkins Craig was a prior conveyance, which was still in full force and virtue, " by reason of which said assignment, patent, and incumbrance, the said William (the plaintiff) hath been prevented from having and enjoying all or any part of the premises above mentioned." We are all of opinion, that upon general demurrer, this must be taken as an averment, that the possession of the premises was legally withheld from the plaintiff by the parties in possession, under the prior title thus set up.[c]

Judgment reversed.

[c] The usual covenants in conveyances of real property by the grantor are, that he is lawfully seised in fee of the premises ; that he has good right and title to convey the same ; that they are free of all incumbrances; that the grantor, his heirs, &c. will warrant and defend the same to the grantee, his heirs, &c. against the lawful claims of all persons. The manner of assigning breaches upon these covenants deserves the attention of all persons who aspire to a reasonable knowledge of the duties of special pleaders. In case of the covenants of seisin and of good right and title to convey, it is sufficient to allege the breach by negativing the words of the covenant. Bradshaw's case, 9 Co. 60 b. S. C. Cro. Jac. 304. Lan-cashire v. Glover, 2 Shower, 460. 2 Saund. 181, note a, by Mr. Sergeant Williams. Greenby v. Wilcocks, 2 Johns. R. 1. Sedgwick v. Hollenback. 7 Johns. R. 376. Marston v. Hobbs, 2 Mass. R. 433. Bender v. Fromberger, 4 Dall. 436. Pollard v. Dwight, 4 Cranch, 421. The covenant for quiet enjoyment is not broken, unless some particular act is shown, by which the plaintiff is interrupted; and, therefore, it is necessary to set forth in the breach, assigned in the declaration, an actual eviction or disturbance of the possession of the grantee. Francis' case, 8 Rep. 91. a. 6 Anon. Com. R. 228. 2 Saund, 181. note. Waldron v. M'Carty, 3 Johns. R. 471. Kortz v. Carpenter 5 Johns. R. 120.

And where the eviction or disturbance is by a stranger, it is further necessary to allege that the eviction was by a *lawful* title. Holden v. Taylor, *Hob.* 12. Foster v. Pierson, 4 *T. R.* 617. Hodgson v. the E. I. Company, 8 *T. R.* 281. Greenby v. Wilcocks, 2 *Johns. R.* 1. Folliard v. Wallace, 2 *Johns. R.* 305. Kent v. Welsh, 7 *Johns. R.* 258. Vanderkaar v. Vanderkaar, 11 *Johns. R.* 122. Marston v. Hobbs, 2 *Mass. R.* 433. But it is not necessary to allege the eviction to be *by legal process.* 2 *Saund.* 181. note. Foster v. Pierson, 4 T. R. 617. 620. And where the covenant is that the grantee shall enjoy, without the interruption of the *grantor himself, his heirs, or executors,* it is held to be a sufficient breach to allege that he or his heirs or executors entered, without showing it to be a lawful entry or setting forth his title to enter. Lloyd v. Tomkies, 1 *T. R.* 671. and cases cited. 2 *Saund.* 181. note. Sedgwick v. Hollenback, 7 *Johns. R.* 376. The covenant of general warranty is governed by the same rules; for the grantee must assign as a breach an ouster or eviction by a paramount legal title. Greenby v. Wilcocks, 2 *Johns. R.* 1. Folliard v. Wallace, 2 *Johns. R.* 395. Kent v. Welsh, 7 *Johns. R.* 258. Sedgwick v. Hollenback, 7 *Johns. R.* 376. Vanderkaar v. Vanderkaar, 11 *Johns. R.* 122. Marston, v. Hobbs, 2 *Mass. R.* 433. Emerson v. Proprietors of Minot, 2 *Mass. R.* 464. Bearce v. Jackson, 4 *Mass. R.* 408. In respect to the covenant against incumbrances, it seemed admitted by Mr. Chief Justice PARSONS, in Marston v. Hobbs, 2 *Mass. R.* 433. that there was no authority directly in point; but he held, that in principle it was analogous to a covenant for quiet enjoyment; and said, that in the entries, the incumbrance is *specially alleged* in the count. See, also, Bickford v. Page, 2 *Mass. R.* 455. It does not, however, seem necessary to allege an ouster or eviction, on the breach of a covenant against incumbrances; but only to allege the special incumbrance as a good and subsisting one. Prescott v. Trueman, 4 *Mass. R.* 629. And a paramount title subsisting in a third person, is an incumbrance within the meaning of the covenant. Prescot v. Trueman, 4 *Mass. R.* 627. So a public town way is, in legal contemplation, an incumbrance on the land over which it is laid. Kellogg v. Ingersoll, 2 *Mass. R.* 87. See Ellis v. Welsh, 6 *Mass. R.* 246.

There is some diversity of opinion as to the damages recoverable upon a breach of these several covenants. Upon the covenants of seisin, and of good right and title to convey, it is held by the courts of New-York and Pennsylvania that the grantee is entitled to the purchase money and interest from

1817.

Duvall
v.
Craig.

the time of the purchase. Staats v. Ten Eyck's executors, 3 *Caines,* 111. Pitcher v. Livingston, 4 *Johns R.* 1. Bender v. Fromberger, 4 *Dall.* 441. The same rule has been adopted in Massachusetts. Bickford v. Page, 2 *Mass. R.* 455. Marston v. Hobbs, 2 *Mass. R.* 433. Caswell v. Wendall, 4 *Mass. R.* 108. But if the grantee has actually enjoyed the lands for a long time, the purchase money and interest for a term not exceeding six years prior to the time of eviction is given; for the grantee, upon a recovery against him, is liable to account for the mesne profits for that period only. Staats v. Ten Eyck's executors, 3 *Caines, R.* 111. Caulkins v. Hams, 9 *Johns. R.* 324. Bennet v. Jenkins, 13 *Johns. R.* 50. As to the covenant against incumbrances, it seems generally held, that the grantee is entitled to, nominal damages only, unless he extinguish the incumbrance; and if he extinguish it for a reasonable and fair price, he is entitled to recover that sum with interest from the time of payment. Delavergne v. Norris, 7 *Johns. Rep.* 358, Hull v. Dean, 13 *Johns. Rep.* 105. Prescott v. Freeman, 4 *Mass. Rep.* 627. And the costs, if any, to which he has been put by an action against him on account of the incumbrance. Waldo v. Long, 7 *Johns. Rep.* 173. In respect to the covenant for quiet enjoyment and of general war-

ranty, the rule of damages adopted in New-York and Pennsylvania is to give the purchase money with interest and the costs of the prior suit; but no allowance is made for the value of any improvements. Staats v. Ten Eyck's executors, 3 *Caines,* 111. Pitcher v. Livingston, 4 *Johns. Rep.* 1. SPENCER, J. dissenting. Bennet v. Jenkins, 13 *Johns. Rep.* 50. Bender v. Fromberger 4 *Dall.* 441. The same rule has been adopted in Tennessee. 5 *Hall's American Law Journ.* 330. But, in relation to covenants of warranty, the courts of Massachusetts have adopted a different rule, and allowed the damages, or, in other words, the value of the property at the time of eviction. Gore v. Brazier, 3 *Mass Rep.* 523. And the same rule appears to be adopted in South Carolina. Liber et ux. v. Parsons, 1 *Bay,* 19. Guerard's executors v. Rivers, 1 *Bay,* 265. And in Virginia. Mills v. Bell, 3 *Call,* 326. Humphrey's administrators v. M'Clenachan's administrators, 1 *Munf.* 493. And in Connecticut. Horsford v. Wright, *Kirby,* 3. Where there is a failure of title, as to part only of the land granted, it has been held that the grantee cannot recover back the whole consideration money. If the title has failed as to an individed part of an entire tract, the grantee is entitled to a like proportion of the consideration; but if it be of a

specific proportion of the tract, the damages are to be apportioned according to the measure of value between the land lost and the land preserved; that is, the portion of the consideration money to be recovered is to be in the same ratio to the entire consideration that the value of the part, as to which the title has failed, is to the value of the whole tract. Morris v. Phelps 5 *Johns. Rep.* 49.

In respect to these covenants running with the land, it has been held in New-York and Massachusetts, that if the grantor be not seised, at the time of conveyance, the covenant of seisin is immediately broken, and no action can be brought by the assignee of the grantee against the grantor; for after the covenant is broken, it is a chose in action, and incapable of assignment. Greenby v. Wilcocks, 2 *Johns. Rep.* 1. Bickford v. Page, 2 *Mass. Rep.* 455. But in a recent case in England, a different doctrine was held; and it was adjudged that such a covenant runs with the land, and though broken in the time of a testator, is a continuing breach in the time of his devisee, and it is sufficient to allege for damage, that thereby the lands are of less value to the devisee, and that he is prevented from selling them so advantageously. Kingdon v. Noble,

4 *Maule & Selw.* 53. And see Kingdon v. Noble, 1 *Maule & Selw.* 355. Chamberlain v. Williamson, 2 *Maule & Selw.* 408. King v. Jones, 5 *Taunt.* 418. S. C. 1 *Marshall's Rep.* 107.

By the Roman law, and the codes which have been derived from it, in case the vendee is evicted he has a right to demand of the vendor, 1st. The restitution of the price. 2d. That of the fruits, or mesne profits, in case the vendee has been obliged to account for them to the owner. 3d. The costs and expenses incurred both in the suit on the warranty and the prior suit of the owner, by whom the vendee has been evicted. 4th. Damages and interest with the expenses legally incurred. *Pothier, De Vente, Nos.* 118. 123. 128. 130. *Code Napoleon, Liv.* 3. *tit.* 6. *art.* 1630. *De la Vente.* The vendee has likewise a right to recover from the vendor, not only the value of all improvements made by the former, but also the increased value, if any, which the property may have acquired independently of the acts of the purchaser. 1 *Domat.* 77. *sec.* 15. 16. *Pothier, De la Vente, Nos.* 132, 133. *Code Napoleon, Liv.* 3. *tit.* 6. *art.* 1633, 1634, *De la Vente. Digest of the Civil Laws of Louisiana,* 355.