KEYSTONE PIPE & SUPPLY COMPANY V.
HENRY ZWEIFEL

No. 6536.   Decided May 27, 1936.
(94 S. W., 2d Series, 412.)

*Slay & Simon,* of Fort Worth, for plaintiff in error.

It was error for the court to hold that no contract was created by and between appellant and appellee since the evidence clearly showed that appellant Zweifel did bind himself in a contract with appellee, which contract was supported by consideration. Taylor v. Mayo, 110 U. S., 330, 4 Sup. Ct. Rep., 147, 28 L. Ed., 163; Connally v. Lyons, 18 S. W., 799; Longhart Supply Co. v. Zweifel, 39 S. W. (2d) 959; Edwards v. Pinkham, 113 Me., 4, 92 Atl., 817.

*Alfred Crager, Zweifel & Tuchy,* of Fort Worth, for defendant in error.

The correspondence between the parties did not amount to a valid contract. Scott v. S. H. Kress Co., 191 S. W., 714; Smith v. Ferrell, 44 S. W. (2d) 962.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

About April, 1927, the Hofmeier-Healy Drilling Company, a partnership, engaged in the business of drilling wells under contract, became financially involved. An arrangement with

creditors resulted in the appointment of Henry Zweifel, as trustee, to take over and assume control of the drilling company's properties and carry out the completion of certain wells then under contract.

Previously thereto, the Keystone Pipe & Supply Company had furnished to the drilling company a large amount of oil well casing and tools under the regular rental contract of the Keystone, which retained title until payment might be made therefor.

Zweifel entered upon his duties, as trustee, and used portions of the Keystone's casing in carrying on the various projects over which he had assumed control.

One of these projects had been sublet to Mike Huber, for which Hofmeier-Healy Company had collected certain moneys and instead of applying to the payment of Huber, used the same themselves. Zweifel settled this claim by turning over to Huber certain pipe, property of the Keystone.

Zweifel was also receiver for the Vitek Oil Company, appointed by the district court of Tarrant County. As trustee of the Hofmeier-Healy Drilling Company, Zweifel loaned certain casing to himself as receiver for Vitek. He testified:—"It was originally a loan from one operation to the other but it finally—I made the loan, and it finally stayed in the well and became the property of the Vitek Company." This met the acquiescence of the Keystone, which credited under date, May 14, 1928, the Hofmeier-Healy Company with 95 joints of casing $1452.88, the credit memorandum therefor containing the notations "Mdse. returned. Transferred by Zweifel to Vitek Lease". On the same date the Keystone, charged Zweifel as Receiver for Vitek with the same 95 joints of casing $1646.59, the statement therefor containing the notations "Sold to Henry Zweifel, Receiver, Paul Vitek. Removed by you from Hofmeier-Healy Drilling Company property during December 1927."

After several interviews between the president of the Keystone and Zweifel looking to the recovery of the casing owned by the Keystone which had been turned over to Hofmeier-Healy, under date, April 10, 1928, Zweifel placed in writing a letter authorizing the Keystone to take possession of all pipe that was not being used and agreeing to replace the pipe that he had disposed of for Hofmeier-Healy, and also to replace the pipe he was then using in the Parks well which he, after the trusteeship had begun, had contracted to drill, and

in which he was then using pipe of the Keystone; said letter follows:

"Fort Worth, Texas,
April 10, 1928.

"Keystone Pipe & Supply Co.
"Fort Worth, Texas.

Att'n: Mr. Horwitz.

"Dear Sir:

"With reference to our verbal conversation concerning the pipe and casing sold to Hofmeier-Healy Drilling Company by Keystone Pipe & Supply Company before the Hofmeier-Healy Drilling Company made an assignment to myself as Trustee for the benefit of the creditors, and which pipe has been left in my possession, upon which you hold a purchase-money lien for the payment of your debt, you are advised that you may at once take possession of (here follows an itemization of 608 joints of pipe of various sizes. It is admitted that these were returned to and repossessed by the Keystone).

"With reference to the 300 feet of 15½-inch casing and 750 feet of 12½-inch casing, which was used by myself as Trustee for the Hofmeier-Healy Drilling Company in making settlement with Mike Huber et al., upon a contract made by Hofmeier-Healy Drilling Company in Culberson County, Texas, you are advised that this pipe will be replaced as far as possible by all of the casing now in my possession upon which you do not hold a mortgage, to wit: 80 joints of 10-inch casing and 7 joints of 20-inch casing.

"With reference to the 12 joints of 15½-inch casing, the 42 joints of 12½-inch casing and the 80 joints of 10-inch free of lien casing, now being used by me in the drilling of the well on the Roy Parks ranch, you are advised that as soon as this well is completed, the above casing will be pulled and placed in the railroad yards at Odessa, Texas, at your disposal."

Under date, April 27, 1928, Zweifel, in reply to communication of the Keystone dated April 12, 1928, advised the latter as follows:

"Gentlemen:

"Replying to your letter of April 12, 1928, with reference to the use of the trucks and men for the moving to the nearest railroad point certain casing now in my possession as Trustee of the estate of Hofmeier-Healy Drilling Company in Assignment, you are advised that after due consideration I feel that it would be extremely unfair to the remainder of the creditors, especially the unsecured creditors, for me to

agree with you that the estate is to repay to you such expense as you may finance the trusteeship in the moving of this casing under your direction for the reasons:

"First: That we, under our disorganized condition, can expect no more than a half a day's work for one day's pay from the men; and, Second, I have spent more than Seven Thousand Dollars pulling the secured property out of the holes where it had been run before I took charge of the properties; therefore, I must reject your proposition as stated in your letter; but I do feel that you are entitled to rental for the remaining pipe being used in the Parks well in Midland County and that the property of the remaining creditors' portion of the estate should be used for the payment of this rental to you; however, if you are unwilling to permit the use of this pipe free of all rental for the purpose of attempting along with the other creditors to secure a producing well from which all creditors might be paid, then it must be considered that the mount of rental due you would be in the neighborhood of $1,000.00 and I am willing to repay to you out of the estate for the expense, as you might be out for the moving of this pipe to not exceed $1,000.00; which $1,000.00 if you insist, will be treated as a trustee expense but not to be paid until the estate is closed up or until it is in such financial condition as enable this to be paid from the money in the hands of the trustee.

"Weekly statement will be rendered to you for the amount of the men's salary, cost of gasoline, oil, etc., for the moving of your casing, and you are to furnish the money with which to meet this expense as the statements are rendered."

Afterwards, it seems, additional pipe was delivered to the Keystone.

The Keystone based its cause of action upon Zweifel's obligation to replace and return the casing which he used in making the settlement with Mike Huber and in drilling the Parks well, as outlined in the letter of April 10th, and upon Zweifel's obligation to pay rentals as outlined in the letter of April 27th, and upon his obligation to pay for the casing which he sold to himself as receiver for Vitek. The Keystone alleged that Zweifel was personally liable upon each and all of the above items.

The trial court held Zweifel liable upon the obligation to replace and return the casing, valued at $1556.00, also for the sum of $486.71, proceeds of the Vitek receivership, $75.00 for money expended in the removal of certain casing—aggre-

gating $2117.71, for which with legal interest from April 27, 1928, judgment was rendered; recovery was denied as to the rentals.

The Court of Civil Appeals affirmed the trial court's judgment insofar as it denied any recovery for rentals, and insofar as it permitted a proportionate recovery for the casing which Zweifel as trustee for Hofmeier-Healy had sold to the Vitek Company, but reversed the judgment and remanded the cause in the other particulars. 60 S. W. (2d) 1065.

OPINION.

*First:* It was undisputed that Zweifel, as trustee, used oil well casing to which the Keystone had the right of possession, in making a settlement with Mike Huber and in drilling the Parks well. The understanding with the Keystone, as to the quantity and character of the casing or pipe to be returned was reduced to writing by the letter of April 10, 1928, and is a specific obligation on Zweifel's part to replace that casing.

The Court of Civil Appeals, erroneously, we think, held that said letter in order to create a valid obligation must constitute a novation of some preexisting contract under which the pipe was delivered to Hofmeier-Healy, and because it did not show an intent to extinguish such contract of delivery, it was ineffective. The letter was, in any event, conclusive evidence of what quantity and character of pipe was to be returned. Whether we consider Zweifel's obligation, evidenced by said letter, as a new obligation or as an addition to or in adjustment of some preexisting contract, he was bound by it, regardless of whether there was a novation, or not.

■ The rule seems to be well established that a trustee or assignee, such as here, in making contracts, is personally liable thereon unless he expressly stipulates that the trust estate and not he shall be liable thereon. Longhart Supply Co. v. Zweifel, 39 S. W. (2d) 959; Bank of Washington v. San Benito & R. G. V. Ry. Co., 293 S. W., 599; Connally v. Lyons, 82 Texas, 664; 18 S. W., 799, 27 Am. St. Rep., 935; 5 Texas Jur., p. 88; 26 R. C. L., p. 1316, sec. 175; Taylor v. Davis, 110 U. S., 330; 4 Sup. Ct., 147, 28 L. Ed., 163; Duvall v. Craig, 2 Wheat. (15 U.S.)45,4 L. Ed., 180.

The trial court found the value of casing used in the Parks well and not returned to the Keystone, to be $1556.00, and the expense to the Keystone of removing the same, which

should have been paid by Zweifel, to be $75.00, and correctly entered judgment therefor.

*Second:* While Zweifel in dealing with himself, as trustee of Hofmeier-Healy and as receiver of Vitek, could not ordinarily affect the Keystone's claim as against the trusteeship to the casing used in the Vitek well, nor evade his personal liability for such misuser, this was condoned by the Keystone, and done with its express approval, as evidenced by its credit memorandum to the Hofmeier-Healy trusteeship and the transfer of the debit therefor to the Vitek receivership.

■ We think therefore that the Keystone thus abandoned its claim for such returned merchandise as against Hofmeier-Healy and Zweifel, trustee, and agreed to look for payment therefor to the receivership estate of Vitek. Zweifel, in that respect, acted in a dual capacity and thereafter was not liable therefor as trustee—the liability then being that of the receivership estate of Vitek for which neither Hofmeier-Healy nor their trustee as such, was liable.

Abandonment in the nature of waiver may be the result of conduct or acts and may be shown by acts and declarations manifesting that purpose. 67 C. J., pp. 304, 308; Id., p. 313; 1 C. J., p. 905; 17 Tex. Jur., p. 132, sec. 5.

In due course, the Vitek receivership was closed under orders of court, the Keystone listed as an ordinary creditor with others, and its pro rata of the proceeds fixed at $486.71, which the receiver was directed to pay to the Keystone; tender thereof was made and refused. This fund, so far as the record shows, is still in the hands of Zweifel and the trial court correctly held that he is personally liable therefor to the Keystone.

■ *Third:* The trial court found that Zweifel became obligated to deliver to the Keystone, 80 joints of 10 inch casing, in lieu of that which was used in making settlement with Mike Huber et al., and liable for so much thereof as was not delivered, but there is no finding as to the amount undelivered, nor its value; why the trial court did not allow any recovery therefor, is not apparent from the record. However, no cross-assignment was levelled at such refusal of the trial court to render judgment therefor nor is it assigned in the application for writ of error, and therefore cannot be considered by us.

■ *Fourth:* We agree with the Court of Civil Appeals and trial court in denying any recovery for rentals of pipe used in the

Parks well, because of the express reservation by Zweifel in referring to that item, that it should be paid out of the remaining creditors' portion of the trust estate and that having been fully closed and insolvent, it is unable to pay any portion thereof.

■ *Fifth:* The amount due as value of the undelivered pipe was unliquidated and a matter of proof. No refusal to pay over the Vitek pro rata claim is shown; it having been tendered and refused, the Keystone is not entitled to interest thereon, so long as said tender is effective.

■ The trial court's judgment, rendered March 26, 1932, allows interest from April 27, 1928, which clearly is error. Interest should be allowed only from the date of judgment and it will therefore be modified accordingly.

The judgment of the Court of Civil Appeals is reversed and that of the trial court as so modified, is affirmed.

Opinion adopted by the Supreme Court May 27, 1936.