## BOWIE SEWERAGE CO. v. CHANDLER.

### No. 14037.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 23, 1940.

Rehearing Denied March 29, 1940.

Bond, Crofts & Bond, of Terrell, and Fred T. Porter, of Kaufman, for appellant.

T. B. Coffield, of Bowie, for appellee.

BROWN, Justice.

Webb Case, alleging that W. W. Chandler, a citizen of Montague County, is a person of unsound mind, brought suit in the District Court of such county as next friend of and for W. W. Chandler, and alleged that Chandler purchased a tract of about 147 acres of land, in the year 1907, through which a creek named Jones Creek flows, and for cause of action alleged

that the defendant Bowie Sewerage Company, a private corporation, in the year 1914, acquired a tract of land situated about a mile or a mile and a half northeast of Chandler's place and through which said Jones Creek also flows, and that the defendant built upon such tract a sewage disposal plant "for use in connection with its sewerage system serving the town and the inhabitants of Bowie." It is alleged that the defendant constructed such "sewerage disposal plant, or settling or dissolving basin, or septic pool or tank for the purposes of dissolving or treating the refuse, filth and organic matter collected by its sewer serving the said town of Bowie; that the sewer mains collecting filth, refuse and garbage from the City of Bowie, or some of such mains, are emptied, and the contents thereof released, into the said disposal plant, tank, pool or basin; that from the said tank, pool or basin in which such waste matter is treated and partly dissolved, the same is released through a pipe or pipes into a certain creek or natural drainage-way known or called Jones Creek. That said pipe carrying said waste matter to said creek was constructed and laid in about the month of September, 1925; that the said waste matter released from the said disposal plant proceeds down the said creek in its natural course onto and over the premises owned by the plaintiff * '* * ; that the point where the said creek runs into the plaintiff's premises is approximately one mile from the place where the said refuse and waste matter is by the defendant released into the said creek; that the plaintiff's property * * * is down-stream from the defendant's disposal plant on said creek."

These allegations are followed by those charging that, since the defendant did the acts complained about, "the creek on plaintiff's premises emits highly offensive and unhealthful odors and disease germs"; that the bottom of the creek bed is discolored and saturated with filth and the water therein is polluted and contaminated, is offensive in its odor and infested with bacteria and disease germs. Then follow allegations that plaintiff has a field in the creek bottom which overflows and which is used by him to raise vegetables; that, before defendant did the acts complained about, the overflow waters were pure and did not injure his crops, but since such acts, when the creek overflows it leaves deposits of refuse, foreign matter and waste, rendering the land practically worthless.

Plaintiff next alleges that the conditions complained about constitute a nuisance and that it is a permanent nuisance. He prays for damages, the difference between the reasonable cash market value of his lands before and after the acts of defendant were had and done.

The plaintiff then pleads in the alternative that the nuisance is only temporary and discloses why it is only a temporary nuisance. He then prays for damages, the difference in the rental value of his land.

Plaintiff next seeks to recover damages because of illness of his wife, brought about by the conditions alleged. He prays for damages and for six per cent interest on his damages from January 1, 1926.

All demurrers, special exceptions and pleas of limitation were overruled by the trial court, and, the cause being tried to a jury, a charge consisting of twenty-seven special issues was given, All exceptions to the charge were overruled and the defendant's request for a peremptory instruction was refused.

The jury found that, (1) the defendant discharges the overflow from its septic tank into Jones Creek, (2) such overflow runs upon plaintiff's premises, (3) the said creek emits odors since defendant commenced discharging its overflow therein, (4) discharging the said overflow into the creek is a proximate cause of the odors, (5) the odors "are materially offensive to persons of ordinary sensibilities residing upon plaintiff's premises", (6) these odors became thus offensive in the year 1925, (7) that such odors will continue to be thus offensive so long as defendant discharges the overflow from its disposal plant into said creek, (8) the creek emits disease germs since defendant commenced discharging its overflow from the septic tank, (9) discharging such overflow is a proximate cause of the disease germs, (10) the disease germs are such as endanger the health of persons of ordinary sensibilities who reside on the plaintiff's premises, (11) that such condition began in the year 1925, (12) and such condition will exist so long as the defendant continues to discharge the overflow from its disposal plant into said creek, (13) the reasonable cash market value of plaintiff's land before it was injured by the sewerage waters was $2,940, and (14) such value immediately thereafter, $1,470; the issues touching Mrs. Chandler's health were answered

against the plaintiff; the jury found that W. W. Chandler is of unsound mind and was when defendant's disposal plant was built and has been ever since; the jury found, (25) that the disease germs emitted by the creek are not caused solely and only by the discharge of the overflow from defendant's septic tank, .and answered the following issue, "26. Do you find from the evidence that the odors and disease germs, if any, emitted by Jones Creek are proximately caused by any other cause than the act of the defendant in discharging its overflow into Jones Creek? No," and found, (27) that the odors were caused solely and only by the said discharge.

The defendant urged a motion to declare a mistrial and to refuse plaintiff a judgment, and. such motion was overruled; this motion was made in the alternative, after the defendant moved for judgment in its favor, and such motion was denied.

The court rendered judgment for plaintiff for $1,470, with six per cent interest from January 1, 1926, making a total recovery of $2,646, and found against plaintiff on all other issues.

Defendant's amended motion for a new trial being overruled, it has appealed, and presents sixteen assignments of error, supported by fourteen propositions.

We do not feel the necessity for discussing all such as that would unduly lengthen our conclusions, and we propose to discuss only what we consider the controlling issues before us. .

■ The first assignment of error is well taken. It contends that the trial court erred in rendering judgment for plaintiff on the theory of there being a permanent nuisance, in that plaintiff's pleadings and the evidence show only a temporary nuisance, if one is established by the evidence, and the wrong measure of damages has been applied.

Plaintiff has pleaded a state of facts which, if true, could establish only a temporary nuisance, which may be abated by the defendant. The evidence tended to show, so far as it goes, that a temporary nuisance exists, and the jury's verdict establishes the fact that the conditions are simply temporary.

The case of City of Honey Grove v. Mills, Tex.Civ.App., 235 S.W. 267, writ dismissed, is squarely in point, as are City of Paris v. Jenkins, 57 Tex.Civ.App. 383, 122 S.W. 411, and Baugh v. Texas & N.

O. Ry. Co., 80 Tex. 56, 15 S.W. 587 and Cross v. Texas Military College, Tex.Civ. App., 65 S.W.2d 794, writ dismissed.

The proper measure of damages in such cases and in this case is "the depreciation in the rental value, or use, or special damages to the land."

■ In such a case as the one before us, when a litigant seeks to recover damages for the character of nuisance as is attempted to be established here, 'we believe that it is necessary to allege and prove facts showing that the defendant's disposal plant is not suitable for the purposes for which it was constructed, or is negligently operated.

■ We feel compelled to take judicial notice of the fact that appellee is seeking damages occasioned by the operation of a sewage disposal plant, constructed for the purpose of serving the inhabitants of a city of more than 3000 souls, according to the Federal Census of 1930, and operated for the purpose of treating all such sewage so that, when so treated, the sewage will not be harmful or obnoxious.

It is obvious, even from plaintiff's pleadings, that the defendant's disposal plant was constructed in order that the sewage from the city of Bowie would not create a nuisance.

The burden is upon plaintiff to plead and prove that it is a nuisance.

■ We think the proof in this case falls far short of the necessary evidence.

It is evident that some of the lay witnesses who undertook to show that Mr. Chandler is a person of unsound mind should not have been permitted to testify that, in their opinion, he was of unsound mind.

■ The rule is that a lay witness may detail facts and circumstances and the acts and statements made by a person, about whom the inquiry is being made, and then, if the trial court is of the opinion that the matters testified to are such as qualify the witness to express an opinion, such witness may then be asked if it is his opinion that the person was, or is, of unsound mind. Wigley et al. v. Buzzard et al., Tex.Civ.App., 124 S.W.2d 898, writ dismissed, correct judgment.

■ The trial court does not have the right to exercise a free discretion in the admission of such testimony. It becomes a question of law as to whether or not

the witness, who has had occasion to observe the acts, demeanor, statements, etc., of the person, has, by the detailing of such matters, qualified himself to give an opinion as to the sanity of such person so observed.

■ There are irreconcilable conflicts in the answers returned by the jury, as is shown by those made to issues Nos. 25, 26 and 27, and judgment should not be attempted to be predicated upon such a verdict.

■ It was error for the trial court to render judgment for interest as damages, on any amount found by the jury, from January 1, 1926. Keystone Pipe & Supply Co. v. Zweifel, 127 Tex. 392, 94 S.W. 2d 412 (Com. of Appls., opinion adopted by Supreme Court).

■ We believe the issue of whether or not any injury has been sustained should be submitted to the jury. 31 Tex.Juri., para. 46, pp. 462 to 464.

Special Issues No. 13 and 14 are duplicitous, in that they assume that plaintiff's land has been injured. No issue touching injury was submitted to the jury.

■ If offensive odors are emitted from Jones Creek and may be smelled by the persons who live on plaintiff's farm, this may be testified to by laymen, as a matter of course, but these facts ought to be established by the jury, in answer to proper questions submitted; but it appears to us that the question of whether or not the waters from such creek emit disease germs, is one for expert testimony.

We say this because many people believe that many diseases are contracted by breathing air, fumes, odors, etc., and by drinking water, when medical science has established the fact that only certain diseases may be contracted by taking them into the human system with one's breath, or by drinking them in.

■ We are of opinion that plaintiff should make definite allegations as to the disease germs and make proof of the existence of such germs, by witnesses who are competent to testify.

■ The defendant objected to the trial court submitting the jury an issue inquiring whether or not the odors from the creek "are materially offensive to persons of ordinary sensibilities residing upon plaintiff's premises", without defining the term "materially offensive." We believe the point is well taken. Such a term is highly technical. Duerkob v. Brown, Mo.App., 255 S.W. 962.

We can see no distinction between the use of the term "material inducement" and that of "materially offensive", insofar as a necessity exists for properly defining same.

Other matters raised will doubtless not occur upon another trial, and are not discussed by us.

For the reasons noted, the judgment of the trial court is reversed and the cause is remanded.