SHOSID et al. v. HUGHES TOOL CO.

No. 14634.

Court of Civil Appeals of Texas.
Dallas.

May 1, 1953.

Rehearing Denied May 29, 1953.

Joe A. Keith and Dean M. Gandy, Sherman, for appellants.

Gillespie & Gillespie, Sherman, for appellee.

CRAMER, Justice.

This is an appeal from a judgment decreeing that Hughes Tool Company recover from Myer Shosid's Independent Executors 139 tricone roller rock drilling bits taken by Hughes Tool Company from Shosid under writ of sequestration. The suit was originally filed by Hughes Tool Company against Shosid, d/b/a Eastern Iron & Metal Company. Myer Shosid having died on May 20, 1952, the independent executors of his estate were substituted as parties before the judgment entry.

For convenience we will designate the parties as Hughes Tool Company and Shosid.

The trial court's findings of fact and conclusions of law were as follows:

"Findings of Fact: (1) On January 10, 1951 a representative of the Hughes Tool Company demanded of Myer Shosid that he deliver the property in controversy in this suit.

"(2) This suit was filed on January 10, 1951 for one hundred thirty-nine (139) tri-

cone roller rock bits bearing the trademark of Hughes Tool Company, substantially as follows which were picked up by the Sheriff of Grayson County, Texas from the premises owned by Myer Shosid, and from the possession of Myer Shosid, under writ of sequestration issued herein. All of said bits were covered with rust. A steel brush was used on more than half the bits to identify the raised trademark, which was relied on by the Sheriff in identifying the bits.

"(3) Each bit manufactured by Hughes Tool Company has stamped into the metal thereof in fine letters about ¼ inch high the words, "Prop Hughes Tool Co". On the bit seized from the defendant which was necessary to use a steel brush to find this stamp at the time of trial, and of the word Hughes only the lower part of the letters. H and U was discernable. On the new bit brought into court at the time of trial the words "Prop Hughes Tool Co" could be seen only by holding the bit up to light. The "shirttail" of the bits where "Prop Hughes Tool Co" is stenciled, takes the worst wear of any point on said bits.

"(4) No Hughes Tool Company bit is delivered without the signing of a delivery report or "DR" form. Each DR form on which Hughes Tool Company bits are delivered contains a lease agreement reading as follows: 'Hughes Roller Rock Bits and all Core Bit Heads are never sold but are leased. When the original cutter teeth and/or bearing have served their useful life, the user will surrender the bits to Hughes Tool Company upon request. In accepting delivery, the user agrees not to surrender any of the tools as mentioned above to other than a duly authorized representative of the Hughes Tool Company.'

"(5) No Hughes Tool Company bits are ever sold, but are leased, the lease agreement being in the form set out in Finding No. (4) above.

"(6) The defendant Shosid was not a representative of the Hughes Tool Company.

"(7) The bits in controversy were acquired by defendant over a period of several months. The defendant had no record describing the bits or identifying the loads they came in; he had no signed bill of sale and the only evidence which he had with reference to the title and ownership of the bits in controversy is the fact that they came over a period of several months in with loads of mixed scrap delivered by some person or persons unknown. Defendant did not know how the person or persons who brought the bits in acquired them; whether they leased them, appropriated them or found them; all he knew about how the bits were handled by Hughes Tool Co. was what he heard at the trial; and he made no inquiry as to how they were acquired by the persons bringing them in at the time they came in or later. His only action was to pay for them when they came in, and he did not do that personally. His agents or employees paid for the loads of scrap from which the bits were later separated.

"(8) The defendant, over a period of thirty years, had occasionally discovered stolen materials in his scrap yard. Defendant bought thousands of loads of scrap every month.

"(9) At the time the bits in question came into defendant's yard, he did not know anything about the method of handling bits by Hughes Tool Company and had no knowledge of any actions on their part with reference to the bits in controversy or any other rock bits.

"(10) Hughes Tool Company permits its lessees to move the bits from site to site at will, and is not informed of such moves.

"(11) Hughes Tool Company is a world-wide organization, and seeks to maintain its leasing system everywhere.

"(12) Hughes Tool Company selected the persons to whom the bits involved in this case were leased.

"(13) The 139 bits were delivered to the points mentioned in plaintiff's request for admissions.

"(14) The used bit which was brought into court at time of trial had not served its useful life, but was capable of doing more drilling.

"Additional Findings: When drillers using Hughes Tool Company bits have completed their hole and move their rigs, it is the customary practice for them to leave the used drilling bits on the ground, if they have not been recovered by Hughes Tool Company before that. Hughes Tool Company has to depend on the efficiency of its salesmen if any of such bits are recovered from such locations. Drilling bits, including Hughes Tool Company bits, are frequently left at completed or abandoned locations in this area for as much as six months after the rigs are moved.

"Conclusions of Law: (1) The bits in controversy were not sold by the Hughes Tool Company, but were leased to various persons.

"(2) The lease agreements under which the bits in controversy were delivered to various persons other than defendant were valid lease agreements and the title to said bits remained in Hughes Tool Company.

"(3) The holders of said bits under said lease agreements were bailees and could not divest Hughes Tool Company, as bailor, of its property by sale, mortgage or other transfer.

"(4) The defendant Myer Shosid was an innocent purchaser for value.

"(5) Plaintiff Hughes Tool Company was not estopped to claim the bits in question.

"(6) Plaintiff Hughes Tool Company did not abandon the bits in question.

"(7) Title to the One Hundred Thirty-nine (139) tricone roller rock bits in controversy remains and is vested in Hughes Tool Company and Hughes Tool Company is entitled to possession of said bits as against the defendants herein."

The points of both parties raise only questions as to the conclusions of law by the trial court; not as to the findings of fact. Appellants brief four points, in substance that the court erred in concluding that Hughes Tool Company (1) " * * *

was not estopped to claim the bits in question"; (2) and " * * * did not abandon the bits in question"; (3) is not entitled to possession of the bits as against Shosid since it did not prove the bits had served their useful life; and (4) error in admitting as evidence the City of Sherman ordinance No. 1645.

Hughes Tool Company counters these points by taking a negative position thereon, and by one cross-point, in substance, that the trial court erred in its conclusion that Shosid was an innocent purchaser for value since not supported by the fact findings or the record.

Shosid, in points 1 and 2, relies on 17 Tex.Jur., Estoppel, sec. 8, p. 136; Neale v. Sears, 31 Tex. 105; Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93, writ ref.; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, writ dis.; Keystone Pipe & Supply Co. v. Zweifel, 127 Tex. 392, 94 S.W.2d 412; Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S.W. 1072; Scruggs v. Crockett Automobile Co., Tex.Civ.App., 41 S.W.2d 509, writ dis.

In Neale v. Sears, a partner succeeded a former partnership and thereafter mortgaged the former partnership property, such partner then assenting to the assumed ownership of the property by the mortgagor. In the Sackenreuther case stock certificates were endorsed in blank and entrusted to a broker who sold to a good faith purchaser. The Victoria Bank case is similar on the facts to the Sackenreuther case in that the stock certificates were endorsed in blank and placed in the hands of a third party. In Keystone Pipe & Supply Co. v. Zweifel the transaction with the third party was with the express approval of Keytone. Consolidated v. Chambers is a case of an unrecorded reservation of title which amounted only to a lien. In Scruggs v. Crockett Automobile Co. it was held that where the bailor knew the bailee had the bailed automobile on bailee's sales floor where it was exposed for sale generally, the bailor was by such facts estopped to assert title as against a bona fide purchaser of the automobile so exposed for sale with bailor's knowledge.

948

The above cases are distinguishable from the case here and, in our opinion, are not applicable. The trial court's findings of fact negative any question of mortgagor-mortgagee relationship, or the knowledge by bailor of the property passing into the hands of third persons. The facts also negative an instance of a negotiable instrument endorsed in blank which might indicate to a purchaser thereof, by reason of such endorsement, that title had passed out of the endorser, or that the endorsement indicated a willingness for the holder to sell the same. The facts also negative abandonment since in abandonment intention is a necessary element and must be established by clear and satisfactory evidence. Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922; Humble Oil & Refining Co. v. Cook, Tex.Civ.App., 215 S.W. 2d 383 (ref. n. r. e.).

The lease involved here covered personal property only and established, without legal exception, a bailor-bailee relationship wherein no title passed to the bailee. Under such bailor-bailee relationship the bailee had no title to convey,—even to an innocent purchaser. Adams v. Whatley, Tex.Civ.App., 213 S.W.2d 885; Seigal v. Warrick, Tex.Civ.App., 214 S.W. 2d 883, writ ref.; Kimbell Milling Co. v. Greene, 141 Tex. 84, 170 S.W.2d 191; affirming Tex.Civ.App., 162 S.W.2d 991.

Points 1 and 2 are overruled.

Point 3 questions lessee's right to the bits since under the Hughes Tool Company's lease the right of possession continued in the lessee throughout the useful life of the bit or bits covered by the lease agreements and therefore Shosid, holding under lessee was under the duty not to surrender the bits to Hughes Tool Company. The lease provided, however, that lessee should not surrender the bits " * * * to other than a duly authorized representative of Hughes Tool Company." Shosid also states that "Hughes must meet the axiom that possession gives prima facie evidence of title to personal property, and that the possessor—here Shosid—will recover against the claims of anyone failing to establish a better right to the property. (33 Tex.Jur. 942). It is not enough for Hughes to show a better right to possession in a third party as against the possessor. Hughes must show such superior right in itself." Also that the contract not to surrender the bits to a third party is either a *personal* covenant on the part of the deliveree or " * * * *a restriction on the right of possession to* the bits * *.*" Citing Williams v. Hughes Tool Company, 10 Cir., 186 F.2d 278. The Williams case is not in point here. When the useful life of the bits ceased, Hughes Tool Company was entitled to possession of the bits. However this was not Hughes Tool Company's only right to possession. Under the terms of the lease the lessee had no right to pass possession of the bits to Shosid, Shosid's vendors, or any other person through whose hands the bits passed after leaving the lessee's possession until they passed into Shosid's possession. The lessee or lessees when they parted with possession of the bits by their voluntary act, breached the terms of the lease and were liable at Hughes Tool Company's option for such damages or other remedy for breach of the lease and also, at the option of Hughes, for conversion of the bits. In addition, each party through whom possession of the bits passed was liable to Hughes Tool Company for conversion of the bit or bits, or for the loss of the bit or bits in a suit for title to the same. Kimbell Milling Co. v. Greene, supra. Point 3 is overruled.

Point 4 asserts error in the admission in evidence of ordinance 1645. The trial here was to the court without a jury and there is no showing, nor do we find from the record, that the ordinance in question was considered by the trial court in arriving at its judgment. The error, if any, was harmless. Point 4 is overruled.

Our holdings above make it unnecessary for us to pass upon appellee's counterpoint.

Finding no reversible error in appellants' points, the judgment below is

Affirmed.