BELDEN *against* SEYMOUR and another.

Where the grantors of a deed of land, describing themselves as administrators of the estate of *A.*, being thereunto authorised by the court of probate, for the payment of the debts of *A.*, conveyed land to *B.*, and in such deed, *as administrators aforesaid,* and *by virtue of the powers* aforesaid, for themselves and for the heirs of *A.*, covenanted, that they had good right to convey the premises ; which deed was signed by the grantors, without any addition to their names ; it was held, that this was a personal covenant, which bound the grantors, and them only.

In the description of land conveyed by deed, known and fixed monuments will controul courses and distances ; and metes and bounds will convey the land embraced by them, though the quantity vary from that expressed in the deed ; on the principle, that the less must yield to the greater certainty.

Therefore, where the description of the land conveyed was as follows : " beginning at the *South-West* corner of *M.'s* home-lot ; thence running *South,* on the line of *Main-street,* 50 feet ; thence turning at right angles, and running *East* 186 feet ; thence *Northerly,* 50 feet to the said lot of *M. ;* thence *West* to the place of beginning ; bounded *South* and *East* upon the heirs of *C., Northerly* upon the home-lot of *M.* and *West* upon *Main-street ;*" and in an action of ejectment founded on such deed, the court charged the jury, that the grantors thereby conveyed to the plaintiff, and covenanted, that they had good right to convey, 50 feet of land on *Main-street ;* and if the line fell short of 50 feet, the defendants had violated their covenant ; it was held, that this was a misdirection ; for it should have been left to the jury to ascertain the point of the *South-west* corner of *M's.* home-lot, and then to ascertain where *C's.* land commenced on the *South,* after which they should have been directed, that if the plaintiff had obtained, by the deed, all the land lying between those points, whether 50 feet or less, the covenant in question was not broken.

This was an action on the covenants of *seisin* and of *good right to convey* in a deed of land, sold to the plaintiff, by the defendants, as administrators of the estate of *John Chenevard* jun. deceased, and by virtue of an order of the court of probate, for the payment of the debts due from such estate. The breach alleged was, that " the said *John Chenevard* jun. was not, at the time of his decease, seised of said land, nor had he any interest therein, and that the defendants had no right to sell the same, but the same was then owned by *John M. Chenevard.*"

The cause was tried, on a general plea of performance, at *Hartford, February* term, 1830, before *Bissell,* J.

On the trial, the plaintiff produced and read in evidence the

*Hartford,*
*June, 1830.*

*Belden*
*v.*
*Seymour.*

deed mentioned in the declaration ; the material parts of which were as follows : " Know ye, that we *Henry Seymour* and *Mary J. Chenevard*, administrators of the estate of *John Chenevard*, jun., deceased, being thereunto authorized, by the court of probate for the district of *Hartford*, for the payment of the debts of the said *John Chenevard* jun., as by the records of said court of probate will fully appear, for the consideration of 1800 dollars received to our full satisfaction of *Thomas Belden*, do give, grant, bargain, sell and confirm unto the said *Thomas* all that lot or plat of land, situate in the city of *Hartford*, described and bounded as follows, *viz.* beginning at the *South-west* corner of Mrs. *Merrills'* home-lot, or the heirs of *Hezekiah Merrills*, deceased ; from thence running *South*, in the line of *Main* street, 50 feet ; thence turning at right angles, and running *East* 186 feet ; thence turning and running *Northerly*, 50 feet, to said *Merrills'* lot ; thence turning and running *West* to the place of beginning ; bounded *South* and *East* upon the devisees and heirs of the said *John Chenevard* jun. and of his late father *John Chenevard* sen., *Northerly* upon the said *Merrills* lot, and *West* upon *Main* street. *To have and to hold,* &c. And also, we, the said *Henry* and *Mary J.*, as administrators aforesaid, and by virtue of the powers aforesaid, do, for ourselves and said heirs, executors and administrators, covenant with the said *Thomas*, his heirs and assigns, that at and until the ensealing of these presents, we have good right to bargain and sell the same, in manner and form as is above written ; and that the same is free of all incumbrances whatsoever. And furthermore, we, the said *Henry* and *Mary J.*, as administrators, do, by these presents, bind said estate to warrant and defend, &c. In witness whereof, we have hereunto set our hands and seals, the 17th day of *March,* A. D. 1812.

*Henry Seymour.* [L. S.]
*Mary J. Chenevard.* [L. S.]"

The plaintiff claimed, that the defendants, by this deed, covenanted, that the lot conveyed measured 50 feet on *Main* street. He also claimed to have proved, that at the time of the execution of the deed, he paid to the defendants 56 dollars *per* foot, for 50 feet of land on *Main* street ; that he immediately afterwards went into possession of the land ; that in 1818, *Henry Seymour,* one of the defendants, measured off to him 50 feet of land on *Main* street, and set up stakes on the *Northern* and *Southern* extremities of the lot ; that af-

terwards, one *John M. Chenevard* brought his action of eject- *Hartford,* ment against the tenants of the plaintiff then in possession of June, 1830. the land for a part thereof, in which suit the defendants were vouched in, and came in, to defend; and that the plaintiff in that action recovered the seisin and possession of 3 feet and 4 inches of said 50 feet, extending through the lot from front to rear. The plaintiff, therefore, insisted, that the defendants were liable for the deficiency; and that the rule of damages was the consideration and interest thereon.

Belden
*v.*
Seymour.

The defendants contended, that having executed the deed *as administrators*, they were not personally liable on the covenants contained therein. They further insisted, that by a just construction of the deed, no more land was conveyed to the plaintiff than belonged to the estate of *John Chenevard* jun. between the *South* line of the *Merrills'* lot and the *North* line of the land owned by the heirs and devisees of *John Chenevard* sen., without regard to the measurement; and that, if they were liable, the consideration paid, with the interest thereon, was not the rule of damages.

The judge charged the jury, that the defendants were personally liable on the covenants contained in the deed; that by the deed, the defendants conveyed to the plaintiff 50 feet of land on *Main* street, and covenanted with him, that they had good right to sell and convey the exact quantity of land mentioned in the deed; that for any deficiency therein the defendants were liable; and that the rule of damages was that claimed by the plaintiff.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*Hungerford* and *Toucey*, in support of the motion, contended, 1. That there had been no breach of covenant. To establish this position, they insisted, first, that the boundary lines of the adjoining proprietors on the *North* and *South*, are known, fixed monuments, or what is equivalent thereto. *Howe* & al. v. *Bass*, 2 *Mass. Rep.* 380. *Pernam* v. *Wead*, 6 *Mass. Rep.* 131. *Mann* & al. v. *Pearson*, 2 *Johns. Rep.* 37. *Jackson* d. *Livingston* v. *Barringer*, 15 *Johns. Rep.* 471. *Cate* v. *Thayer*, 3 *Greenl.* 71. *Jackson* d. *Butler* v. *Widger*, 7 *Cowen* 723. Secondly, such monuments controul distances or length of line and quantity of land. See the cases referred to above; also, *Newsom* v. *Pryor's* lessee, 7 *Wheat.* 7. *Preston's* heirs v. *Bowmar*, 6 *Wheat.* 580. This results from the general principle,

that what is most certain shall controul what is less certain. *Jackson* v. *Camp*, 1 *Cowen*, 612. Thirdly, the length of line and precise quantity of land were not of the essence of the contract; and the line on *Main* street proving, on measurement, shorter than that mentioned in the deed, constitutes no breach of covenant. A description of land, by the length of line, or number of acres, rods or feet, is not a covenant, that such is in fact the length of line or quantity.

2. That the defendants were not *personally* bound, by the covenants in the deed. And here, it may be admitted, that administrators *may* bind themselves, by apt words in a deed; as was done in *Mitchell* v. *Hazen*, 4 *Conn. Rep.* 495. and *Coe* v. *Talcott*, 5 *Day* 88. The general principle is, that where the terms of the contract bind the principal, and not the agent, the agent is not liable on the contract; though he may be, in an action on the case for assuming authority not delegated. *Harper* & al. v. *Little*, 2 *Greenl.* 14, 20, 21. 2 *Kent's Comm.* 493. *Ballou* v. *Talbot*, 16 *Mass. Rep.* 461. All the cases establishing a personal responsibility, go on the ground of an express contract, shewing a clear intention of the party to assume such responsibility. *Thayer* v. *Wendell*, 1 *Gallis.* 37, 40, 41. *Adams* v. *Whittlesey*, 3 *Con. Rep.* 560. 566. In this case, it was not the understanding of *either* of the parties, that the defendants should be personally bound. The plaintiff did not rely on their personal credit. The defendants did not act in their individual capacity, but *as administrators*, expressly declaring, on the face of the deed, that their *power* to act was derived from the court of probate. If the covenant would be ineffectual to bind the estate, still it was all that one party was willing to give, and it was such as the other party was willing to accept. The court cannot make a covenant for the parties, which they have not thought fit to make for themselves.

*I. Perkins*, contra, contended, 1. That if the land in question was embraced by the deed, the covenant of *good right to convey* extended to the *quantity*; this being an assurance to the purchaser, that the grantor has the very estate in *quantity* and quality, which he purports to convey. *Howell* v. *Richards*, 11 *East*, 633. 642. Recognized in *Lockwood* v. *Sturdevant*, 6 *Conn. Rep.* 373. 386.

2. That the deed purported to convey, and the defendants covenanted therein for, 50 feet of land on *Main* street. It may be admitted, without prejudice to the plaintiff's claim, that

fixed, visible monuments are to govern; but in this case, there were no such monuments. Here was a tract of land, lying *South* of the *Merrills'* lot, and *East* of *Main* street, belonging to the *Chenevard* estate. The defendants sold off to the plaintiff a part of this lot, *viz.* 50 feet on *Main* street, 186 feet deep. The breadth and length of the land sold, are given with precision. From these the boundaries may be ascertained exactly. But nothing else is given. Reject the length of line on *Main* street and the length of line from *Main* street *Eastward,* and it is impossible to ascertain the boundaries. It is the *plaintiff* who claims the benefit of the rule, that what is certain shall controul what is uncertain. 4 *Kent's Comm.* 455. *Jackson* d. *Livingston* v. *Barringer,* 15 *Johns. Rep.* 471. 473. *Powell* v. *Clark,* 5 *Mass. Rep.* 355.

3. That administrators, covenanting, as such, for a right to bargain and sell, are *personally* liable. The court will construe the covenant so that it may *have effect;* but an administrator cannot bind the estate, by such covenant. It is, in its nature, a personal covenant. 4 *Dane's Abr.* 332. c. 115. s. 5. 4 *Kent's Comm.* 450. *Mitchell* v. *Hazen,* 4 *Conn. Rep.* 495. *Mitchell* v. *Warner,* 5 *Conn. Rep.* 497. *Griswold* v. *Bigelow,* 6 *Conn. Rep.* 258. *Davis* v. *Lyman,* 6 *Conn. Rep.* 249. *Sumner,* admr. v. *Williams,* 8 *Mass. Rep.* 162. The case last cited was ably argued and thoroughly examined, and is full to the point.

DAGGETT, J. Two points are presented by this motion, for the consideration of the court. 1. Are the defendants *personally* liable on these covenants? 2. Are the defendants liable for a breach of these covenants, because the land, by mensuration, fell short of 50 feet on *Main* street? Both these points are presented, by the charge of the judge.

1. The covenant in the deed, so far as it bears on the first question, is in the following words: "Know ye, that we, *Henry Seymour* and *Mary J. Chenevard, administrators* on the estate of *John Chenevard,* jun., being thereunto lawfully authorized, by the court of probate for the district of *Hartford,*" &c. "Also, we the said *Henry Seymour* and *Mary J. Chenevard, as administrators* as aforesaid, and by virtue of the powers aforesaid, do, for ourselves, and said heirs, executors and administrators, covenant with said *Thomas Belden,* his heirs and assigns, that at and until the ensealing of these presents, we have good

*Hartford,* June, 1830.

Belden
*v.*
Seymour.

right to bargain and sell the same in manner and form as is above written ; and that the same is free of all incumbrances whatsoever. And furthermore, we the said *Henry Seymour* and *Mary J. Chenevard, as administrators*, do, by these presents, *bind said estate* to warrant and defend," &c. By the word " heirs" &c. is meant the heirs of *John Chenevard* deceased. The deed was signed by the defendants, by their proper names, without the addition of *administrators*.

Are the defendants *personally* bound by these covenants ? The case of *Mitchell* v. *Hazen*, 4 *Conn. Rep.* 495. must settle this question. That case was decided on deliberation, and by a unanimous opinion of the court, in *June* 1823. The difference is only ;—first, in that case, the defendant covenanted for himself, his heirs, executors and administrators, and also for the heirs of another person. Here, the defendants bind themselves, and the heirs of another person. Secondly, in that case the defendant signed the deed *as administrator*. Here, the defendants sign without the addition of their character. In both cases, the administrators bound themselves ; in both cases, they *attempted* to bind others ; in neither case, could they, on principles of law, bind others. The covenants in neither deed bound, or could bind, any but the grantors. They could have no operation, if not obligatory upon the grantors. This case, then, must be governed by the case of *Mitchell* v. *Hazen*. If the case cited needed any support, the strong case of *Sumner* v. *Williams*, 8 *Mass. Rep.* 162. and *Duvall* v. *Craig*, 2 *Wheat*. 45. are full to the purpose. In the first of these cases, the deed was executed by *administrators ;* they covenanted *as administrators*, that they were well seised as administrators, and as such, that they would defend, &c. They *signed* and *sealed* the deed *as administrators*. The only difference, then, is against these defendants.

In *Duvall* v. *Craig*, the supreme court of the *United States* held, that if a trustee bind himself, he is liable at law for a breach thereof, although *he describes himself as covenanting as trustee*. The doctrine, then, is, that where a person covenants in a deed *as administrator*, it is a personal covenant, and he is personally bound. Thus far, the charge is correct.

2. The judge charged the jury, that the defendants conveyed to the plaintiff 50 feet of land on *Main* street, and covenanted with the plaintiff, that they had good right and title to convey the exact quantity of land mentioned in the deed ; and that for

any deficiency therein, the defendants were liable. This part of the charge cannot be sustained.

The description of the land in the deed is as follows: " All that lot or plat of land, situate &c., described and bounded as follows, *viz.* beginning at the *South-west* corner of Mrs. *Merrills*' home-lot, or the heirs of *Hezekiah Merrills*, deceased; from thence running *South*, on the line of *Main* street, 50 feet; bounded *South* on the heirs of *John Chenevard*, deceased." The question is, are the defendants liable for any deficiency of this line, should it, by mensuration, fall short of 50 feet? The rule is, that known and fixed monuments controul courses and distances. So the certainty of metes and bounds will include all the lands within, though the quantity vary from that expressed in, the deed. The least certainty must yield to that which is most certain, if they cannot be reconciled. 4 *Kent's Comm.* 455. This general doctrine is established, by the highest courts, in *Connecticut, Massachusetts* and *New-York,* and by the supreme court of the *United States. Snow* v. *Chapman,* 1 *Root,* 528. *Howe* & al. v. *Bass,* 2 *Mass. Rep.* 380. *Pernam* v. *Wead,* 6 *Mass. Rep.* 131. *Jackson* ex dem. *Staats* & al. v. *Carey,* 2 *Johns. Ca.* 350. *Jackson* ex dem. *Butler* v. *Widger,* 7 *Cowen* 723. *Jackson* ex dem. *Roberts* v. *Ives,* 9 *Cowen* 661. *Preston's* heirs v. *Bowmar,* 6 *Wheat.* 580. The judge charged the jury, that if the line fell short of 50 feet, the defendants had violated their covenants, without instructing them where to begin, or where to terminate. It should have been left to the jury to ascertain the point of the *South-west* corner of Mrs. *Merrills'* lot, and then to ascertain where *John Chenevard's* land commenced on the *South* ; and they should have been directed, that if the plaintiff had obtained, by the deed, all the land lying between those points, be it 50 feet or less, the covenants of the defendants were not broken. In that event, the plaintiff would have holden to those points, and no further ; nor did the defendants, according to the doctrine of the cases cited, convey, or attempt to convey more or other land. It is not suggested, that there is any uncertainty in the boundaries of the land on either side of the land in question. It then may have been so, that there is on the *South-west* corner of Mrs. *Merrills'* lot a known monument, and so on the *North* side or *North-west* corner of *John Chenevard's* lot. And if those corners are thus known, the deed did not convey, nor attempt to convey, more than lies between them. What if the

deed had described the line as beginning at a white-oak tree, and terminating at a chesnut tree, and being 50 feet in length? It is ascertained, that between those trees the distance is only 40 feet; the plaintiff can claim no more; or, if it appears that it is 60 feet, the plaintiff will hold the whole. Fixed monuments must controul courses and distances. The case in 6 *Mass. Rep.* 131. is, except in name, this case.

I therefore think, that there ought to be a new trial, to the end that the parties may place the case on more correct ground.

It seems by the motion, that it was insisted on the part of the plaintiff, that he had been evicted of a certain part of the land in question, by a suit in which the defendants were vouched in to defend. As the judge took no notice of that point in his charge, and as the cause appears to have been decided on the construction of the deed, it is unnecesary further to notice this part of the motion.

Let there be a new trial.

In this opinion Hosmer, Ch. J. fully concurred.

Peters, J. concurred as to the personal liability of the defendants; but he was satisfied, that the construction of the deed given at the trial, was correct. The boundary on the *South* was an imaginary line, not a fixed, visible monument, such as will controul courses and distances.

Bissell, J.    A new trial is moved for, in this case, on the ground of a misdirection of the judge, on the circuit. Two exceptions are taken to the charge.    1. That the jury were instructed that the defendants were personally liable on the covenants contained in their deed.    2. That the covenants extended to the quantity of land mentioned in the deed, and that for any deficiency therein, they were liable.    It is the unanimous opinion of the Court, that the defendants are personally liable on these covenants. The first exception is, consequently, overruled. On the second, it is decided, that a new trial ought to be granted. On this point, I have the misfortune to differ from the Court. In my opinion, the covenants in this deed, extend to the quantity of land mentioned: and the reasons for that opinion I will briefly state.

It ought, here, to be remarked, that no question of fact, was

required to be submitted to the jury, on the trial. On the part of the plaintiff, it was claimed, that the defendants executed the deed : That he paid to the defendants fifty six dollars per foot for fifty feet of land on *Main* street : That *John M. Chenevard* brought his action of ejectment against the tenant of the plaintiff in possession ; and that he recovered, in that action, three feet, and four inches, on *Main* street : That the defendants were vouched in to defend, and that they came in and defended that suit : That 46 feet, 8 inches, on *Main* street, was all which the defendants had a right to convey, being all that, in fact, belonged to the estate of *John Chenevard* deceased. None of these facts were denied. The defendants rested their defence, entirely, on the legal effect of their deed ; insisting, that by the construction of that instrument, no more land was conveyed to the plaintiff, than belonged to the estate of *John Chenevard* deceased, and embraced within the boundaries mentioned, be the same fifty feet, more or less, on *Main* street ; and prayed the court so to charge the jury. I repeat, there was no fact in dispute upon which the jury was called to pass. The only question made, was a question of construction. And the only question here is, whether the proper construction was put upon the defendants' deed. And in order to determine this question, we are to look to the instrument itself ; and from that, to ascertain the intent of the parties. The premises conveyed are described as beginning on the *Southwest* corner of *Mrs. Merrills'* home-lot, from thence running *South*, on *Main* street, fifty feet ; thence turning at right angles, and running *East* one hundred and eighty-six feet ; thence turning and running *Northerly* fifty feet, to said *Merrills'* lot ; thence turning and running *West*, to the place of beginning. It will not be denied, that this description is sufficiently certain. And it will also be admitted, that if the deed had stopped here, and no further description of the premises had been given, the quantity mentioned would have been of the essence of the contract, and embraced by the covenants of the defendants. Such must have been the construction of the deed. But this further description is given. The lot is described as bounded *Northerly* by *Mrs. Merrills'* lot, *Westerly* on *Main* street, *South* and *East*, upon the heirs and devisees of *John Chenevard*, deceased, and of his late father, *John Chenevard*, the elder, deceased.

Does this additional description, (which must be admitted to

*Hartford,*
June, 1830.

Belden
*v.*
Seymour.

be wholly unnecessary) so vary the nature of the instrument, as to call for a different rule of construction, making the quantity mentioned, matter of description merely, instead of the essence of the defendants' contract?

I have no doubt, that where a deed describes lands by admeasurement, and also by certain known, fixed and visible monuments, the monuments are to govern; and the quantity mentioned is wholly immaterial. The authorities are all so; and are founded in the highest reason and good sense. But still the question arises, does the case before us, fall within the principle, and demand its application? Is this a case of description by fixed, known and visible monuments? If it be, the charge was unquestionably wrong. If it be not, the courses and distances are to prevail.

It was, undoubtedly, competent for the defendants, on the trial, to have proved, that the lands, on which the granted premises were bounded, were such known, fixed and visible monuments. The affirmative was on them. They declined the proof; and if their construction of the deed be correct, the evidence was certainly unnecessary. I lay no stress on the fact, that the lot conveyed was bounded, in part, by the lands of *John Chenevard,* deceased, whose representatives the defendants are; although I deem that circumstance, by no means an immaterial one, in giving a construction to the deed. But I wish to meet the question raised in the argument, and on which I understand the discussion to have turned. The question is this: where the premises conveyed, are bounded by lands, other than those of the grantor, is it necessarily implied, that the quantity mentioned is always matter of description merely, and never of the essence of the contract? The affirmative of this question, I think the defendants are bound to maintain. The case demands it of them; and they have attempted so to do. In my judgment, the position has not been, and cannot be, vindicated, either on the ground of principle, or authority.

In the first place, how is this position sustained by the authorities?

A number of cases, supposed to be analogous, have been cited at the bar, which it may be necessary briefly to review. The case of *Snow* v. *Chapman,* 1 *Root,* 528. is relied on. It appears from the report of that case, that the farm conveyed, *was described particularly by lines and bounds.* And the only point decided was, that the covenants of the defendant extended only to the land embraced within the lines and bounds

*so described,* and did not extend to the quantity, mentioned in the deed.

In *Howe* & al. **v.** *Bass,* 2 *Mass. Rep.* 380. the granted premises were described as measuring forty-five feet on *Orange* street ; and bounded on one side, by land of the heirs of *Joseph Kent,* and on the other, by land of the heirs of *Joseph Veasie.* There appears to have been no dispute regarding the boundaries, between the land conveyed, and the lands of the adjoining proprietors ; for it appeared, by a plan used on the trial, and which *was agreed to represent truly the lands of the heirs of Kent and Veasie,* that the lot between them measured sixty-five feet on *Orange* street ; and the question was, whether the purchaser should hold to the bounds, or whether, under the peculiar circumstances of the case, he should be confined to the exact quantity mentioned in the deed. If the latter construction were to have prevailed, it is apparent, that the description would have been false : for the lot would not have been bounded by the heirs of *Kent,* on the one side, and the heirs of *Veasie,* on the other. It is also apparent from the whole case, that the boundaries both on the one side and on the other, were known and visible monuments. It was agreed, where the lands of the adjoining proprietors were, and the judge instructed the jury, " That where certain fixed monuments, or immoveable objects are referred to, *for the purpose of ascertaining the quantity of land conveyed,* those monuments must govern, although it should appear, that the actual admeasurement did not agree with the extent stated in the deed :" and in giving the opinion of the court, *Parker,* **J.,** observes : " There is no rule of construction more established than this ; that where a deed describes land by its admeasurement, and at the same time, by known and visible monuments, these latter shall govern : and the rule is bottomed on the soundest reason. There may be mistakes in measuring land ; but there can be none in monuments. When a party is about purchasing land, he naturally estimates its quantity, and of course its value, by the fences which inclose it, or by other fixed monuments, which mark its boundaries ; and he purchases accordingly."

The case of *Powell* **v.** *Clark,* 5 *Mass. Rep.* 355. has been cited. Two tracts of land were conveyed. The one was described as the *Easterly* end of a fifty acre lot, &c. The said *Easterly* end extending *Westwardly, as far as the main run of water, which passes through said land,* containing twenty-nine

acres and twelve rods of ground. The other tract was described, as lying on a stream of water, called *Mill-brook*, which the defendant bought of *Samuel Warner* ; which he then bounds, by certain monuments, lines and courses, coming round to the place of beginning ; containing six acres and one hundred and thirty rods of ground. It was decided, that the words expressing the quantity of land, in the two tracts, did not amount to a covenant, but were merely descriptive of the lands conveyed. *Parsons*, C. J., in pronouncing the opinion of the court, says : " Each tract is definitely limited, and any surveyor could easily ascertain its contents ; and the plaintiff might have known the quantity of land contained within the limits described, before he concluded his purchase, by taking the proper trouble."

In the case of *Pernam* v. *Wead*, 6 *Mass. Rep.* 131. the only question was, whether the land claimed by the demandant, had been extended upon an execution against him, in favour of one *Sawyer*, under whom the tenant claimed.

The case came before the court upon the facts stated in the judge's report, from which it appeared, that the land, upon which *Sawyer's* execution was extended, was bounded *Southwestwardly* by *Drury-lane*, *Northeasterly* by land of *Sawborne & Collins*, *Northwestwardly* by other lands of the demandant, and *Southwestwardly* by land of *Fletcher*. Both the length of lines and quantity were mentioned. The demandant insisted, that there was an over-measure ; *but it was agreed, that Drury-lane, the land of Sawborne & Collins on one side, and the land of Fletcher on the other side, were all fixed, known monuments, about which there was no dispute ; and there was no question between the parties, as to the other lands of the demandant, parallel to Drury-lane.* And the only point decided was, that the boundaries of the land, being fixed, known and unquestionable monuments, must govern, although neither the courses, distances, nor the computed contents should correspond.

In *Jackson*, ex dem. *Butler* v. *Widger*, 7 *Cowen*, 723. the description in the deed was as follows : " Beginning on the *East* line of *Butler's* tract, called *The Range*, at the corner of lots No. 11. and 12. of the same range ; thence *West* 41 ch. 50 l. to the centre of the *Mill-creek*; thence up the centre of the same as far as will make *Northern* latitude, 38 ch. 50 l. *to the Farr clearing, so called.*" It was held, that the purchaser was entitled to go to the *Farr clearing*, although the distance might exceed the 38 ch. 50 l. mentioned in the deed.

In *Mann* and *Toles* v. *Pearson*, 2 *Johns. Rep.* 37. the lot conveyed was described as lot No. 78 ; the boundaries of which were designated and indisputable.   The quantity was given ; and it was decided, that the grantee took the entire lot, notwithstanding the quantity greatly exceeded that mentioned in the deed.

So in the case of *Jackson*, ex dem. *Livingston* v. *Barringer*, 15 *Johns. Rep.* 471. the premises conveyed were described as the farm on which *J. T. Decker* now lives, to contain 80 acres in one piece.   The same point was decided, to wit, that the entire farm passed, be the quantity what it might.

So also in the case cited from *Cranch*, (*Lodge's lessee* v. *Lee*, 6 *Cranch* 237.) the conveyance was of an island.   The courses and distances were mentioned in the deed ; but these did not embrace the whole island.   It was held, that the grantee took the entire island, and was not confined to the quantity, embraced within the courses and distances.

These are the principal cases, which were relied upon, in the argument. They most satisfactorily prove, what is readily admitted, that certain, fixed and known monuments controul courses, distances and estimated quantities. But, in my judgment, they do not prove, that where the lands conveyed are described as bounded by lands, other than those of the grantor, such monuments are of course to be implied ; and that such is necessarily the construction of the deed.   Such monuments, I admit, there may be ; and so, on the other hand, the line between adjoining proprietors may be merely imaginary.   *Parsons*, C. J., in the case of *Pernam* v. *Wead*, already cited, remarks : " Where the boundaries of land are fixed, known and unquestionable monuments, though neither courses nor distances, nor the computed contents correspond, the monuments must govern.   With respect to courses, from errors in surveying instruments, variations in the needle and other causes, different surveyors often disagree.   The same observations apply to distances, arising from the inaccuracy of measures, or of the party measuring ; and computations are often erroneous.   But fixed monuments remain : about them there is no dispute or uncertainty : and what may be uncertain must be governed by monuments, about which there is no dispute." 6 *Mass. Rep.* 133.   But are the lines between adjoining proprietors always thus certain ? Is it a new thing that they should be disputed ? Or that they should be the subject matter of litigation, and that courts

and juries should be called upon to fix and settle their location? The truth is, such a line is not necessarily a defined and settled boundary: nor is it what the cases recognize as a known and unquestionable monument. And not a case has been cited, in which it has been held, that the courses, distances and computed contents are not of the essence of the contract, but where the land conveyed has been defined by unquestionable monuments, either expressed upon the face of the deed, or agreed upon, by the parties, or settled on the trial.

I cannot, therefore, think, that the authorities support the construction contended for by the defendants.

It has, however, been urged, that the question whether here were fixed, known monuments, ought to have been put, as a question of *fact*, to the jury. I repeat, that no such question was made on the trial. If such monuments there were, it was for the defendants to show the fact. The burden of proof was on them. There is no pretence, that there was any evidence on the point. The claim was, that the fact was to be inferred from the deed itself. On this the defence was rested, and the court was required to say to the jury, that as matter of law, the covenants in the deed did not extend to the quantity mentioned. Ought the jury so to have been instructed?

Having examined this question on the ground of authority, I inquire,

2. How does it stand in the light of principle?

Whether a contract be, or be not under seal, the same rules of construction are to apply. *Seddon* v. *Senate,* 13 *East* 74. *Chitty on Cont.* 19. And a first principle is, that the construction is to be reasonable, and as near the minds and apparent intent of the parties, as the *rules of law will admit.* 2 *Bl. Com.* 379.

Now, I think it impossible to look upon this deed, and resist the impression, that it was the intention of the defendants to sell, and of the plaintiff to purchase, a precise and definite quantity of land. The conveyance was of a building lot, in the heart of a populous city; where a single foot of front, more or less, might determine the purchase. There is the utmost particularity of description; a description every way perfect, before the boundaries of the lot are even adverted to. The precise length of lines, and the precise angles are given. Now, if the lot, which the defendants undertook to convey, was marked by any known and unquestioned monuments on the *South,*

why are not these monuments referred to in the deed? And whence this minuteness in the description of courses and distances, if they had really nothing to do with the contract? Why this minuteness, unless the defendants meant to covenant, that the length of line between the *Merrills* lot, and the lot of *John Chenevard,* deceased, was fifty feet? I admit, that if a wall, a building, or any other visible monument had been mentioned, as the *terminus* of this line, on the *South,* marking and designating the *Southern* boundary, the construction would have been different. In such case " the plaintiff might have known the quantity of land contained within the limits described, before he concluded the purchase, by taking the proper trouble ; any surveyor could easily ascertain the contents." But no such object, no such monument is mentioned? The question is, where is the land of *John Chenevard* deceased? The defendants say, in their deed, it is fifty feet, on *Main-*street, from the corner of the *Merrills* lot. It proves to be only 46 feet, 8 inches. The defendants now say, we stipulated for no precise quantity of land. We left you, the purchaser, to settle the line between the lot conveyed, and that of the adjoining proprietor, at your own risk and your own expense. Was such the intent of the parties? And is this intent fairly deducible from the instrument, upon which the court was required to put either this construction, or the one which was actually put upon it? I think not. I think the construction claimed is demanded by no rule of law ; that it is opposed to the justice of the case ; and does violence to the manifest intent of the parties.

*A.* conveys to *B.* a building lot in the city of *Hartford ;* describes it as measuring from a fixed point on the *North,* fifty feet ; gives the precise courses, distances and contents ; and in conclusion, bounds it by lands of *C.* on the *South.* But the line between *A.* and *C.* is a disputed line ; and is finally settled, by the verdict of a jury. It however turns out, that instead of 50, *A.* had only 10 feet front ; and of course, could sell no more. Now, on the construction claimed by the defendants, if *A.* had any land between the *Northern* boundary and the land of *C.,* so that the lot conveyed is correctly bounded, he is not liable on his covenants. And if there be no intermixture of fraud in the case, the purchaser is forever remediless.

I know it has been suggested, that it does not appear, that the corner of the *Merrills* lot is an agreed, and settled boundary ;

*Hartford,* June, 1830.

Belden *v.* Seymour.

that the plaintiff may have suffered *Merrills* to encroach upon him, on the *North*, and measuring 50 feet from the point of such encroachment, may, in his turn, have encroached upon the adjoining proprietor on the *South*; and that the case ought to be again submitted to a jury, for the purpose of ascertaining, whether such be the fact. To this it may be answered, that this point is treated as a well known and settled boundary, by the parties to this deed. It is mentioned as the place of beginning; and it can hardly be supposed, that they commenced measuring at a particular point, without ascertaining where the point was. Besides, if there were any question with regard to this, it was fairly open to the defendants on the former trial. The proof was with them. It does not appear, that any was offered, or that any such claim was then made.

Again, if we may be permitted, for a moment, to look at the facts appearing on the motion, it is very apparent how the parties understood this contract; and equally apparent, that entire justice has been done between them. Why, when *John M. Chenevard* brought his action of ejectment, were the defendants vouched in? And why did they come in and defend in that suit? Why, unless they put the same construction on their contract, as has now been put upon it? Will it be said, that it does not appear from the motion, that these facts were found to be true? I answer: it does appear, that evidence was offered to prove them; and that they were not denied. Besides, there was only one legitimate source of proof, to which the party could have resorted; and that is the record. Why, then, should the case go to another jury, to find a set of facts, not denied on the former trial, and which appear to have been proved by record evidence?

But after all, the case turns upon the construction of the deed. In my opinion, the covenants of the defendants extend to the quantity of land mentioned; and for any deficiency therein they ought to be held liable.

WILLIAMS, J. gave no opinion, having been of counsel in the cause.

New trial to be granted.