## BAILEY *v.* WHITE.

A deed which commences its description "at a stake and stones at the southwest corner" of the premises intended to be conveyed, "it being the northeast corner of land that D. W. deeded to J. W. May 20, 1815," can only be construed as intending to describe and to convey land, the southwest corner of which is identical with the northeast corner of the tract referred to therein.

Where a deed describes the line of the premises intended to be conveyed as running "by the land the said D. deeded to the said J. W.," the word "by" is not to be construed as meaning "over," or "across," but "along the line of" the tract of land referred to therein.

Where a deed in fact describes no territory whatever, it cannot properly be construed to pass the title to any particular tract of land, but must be regarded as wholly inoperative.

TRESPASS *quare clausum.* The *locus in quo* was described in the writ as "beginning at a white oak tree at the southeasterly corner of a certain hundred acre lot formerly owned and occupied by Mark Baker, thence northerly on the line of said hundred acre lot sixteen rods, thence southerly forty-five degrees east about thirty rods, to land of William Dunklee, thence southwesterly on the line of said Dunklee's land six rods, thence in a straight line to the place of beginning." The plaintiff claimed that it was part of twenty acre lot 95, in the third division of lots in Bow, while the defendant contended that it was part of twenty acre lot 93 in the same division. It was conceded that the plaintiff owned the whole of lot 95, and all the northeastern half of lot 93 which adjoined lot 95 on the southwest, unless the place of the alleged trespass was the extreme northeastern portion of lot 93; which was the question in controversy between the parties.

May 20, 1815, David and James White were the owners in fee simple as tenants in common of lot 93, and James Robinson was the owner in fee simple of lot 95, which adjoined lot 93 on the northeast. On that day David and

James White divided lot 93 between themselves, David taking the southwesterly portion of the lot, and James the northeasterly portion thereof, and each quitclaimed to the other the portion assigned to him. The portion of the lot quitclaimed by David to James White on that occasion, is thus described in the deed from David to James White, dated May 20, 1815, to wit: "Beginning at the south [west] corner of Dea. James Robinson's twenty acre lot at a pine, thence south forty-five degrees west twenty-one rods to an oak, thence north forty-five degrees west twenty-six rods to a yellow oak and Joseph Baker's land, thence north sixty-nine degrees east to said Baker's easterly corner, thence northerly by said Baker's land till it strikes said Robinson's land, thence south forty-five degrees east, by said Robinson's land, to the bound first mentioned."

The defendant claimed title to the *locus in quo* under a quitclaim deed from James White to David White, the father of the defendant, and whose title the defendant now holds, dated February 8, 1819, of a tract of land described as follows: "A certain tract of land situate in said Bow, containing one hundred and thirty rods, bounded as follows, to wit: at a stake and stones at the southwest corner, it being the northeast corner of land that David White deeded to James White, May 20, 1815, and from thence northeast about six rods to a pitch pine, spotted, by land of widow Robinson, thence northwest by said widow Robinson's land to Mark Baker's land, about thirty rods, thence southerly by said Baker's land about sixteen rods to a pine tree, spotted, near said Baker's corner of a hundred acre lot, then by the land the said David deeded to the said James White fourteen rods, to the place of beginning."

Between May 20, 1815, and February 8, 1819, James Robinson had died, and said lot 95 was then in the possession of his widow, and the land of Joseph Baker,

mentioned in the deed of 1815, had passed into the hands of Mark Baker, so that by the land of widow Robinson, in the deed of 1819, was intended the same land as that described as Dea. James Robinson's twenty acre lot, in that of 1815, and by Mark Baker's land and said Baker's corner of a hundred acre lot, in the deed of 1819, was intended the same land and corner spoken of in the deed of 1815, as the land and corner of Joseph Baker.

The plaintiff objected to the defendant's claim of title under the deed of 1819, that, when taken in connection with the deed of May 20, 1815, the deed of 1819 could not convey any title to any portion of lot 93, situate northeasterly of the land conveyed to James White, by the deed of May 20, 1815, to which lot alone was there any pretence that either of the Whites ever had title, and that, when taken in connection with the deed of 1815, which conveyed to James White the whole northeastern portion of lot 93, bounding him the whole distance on the northeast by the twenty acre lot of James Robinson, then occupied by the widow Robinson, the deed of 1819, which, by reference to the deed of 1815, in reality commenced at the Robinson corner, ran to that corner, thence by the Robinson land to the Mark Baker land, and thence to the land conveyed to James White by the deed of 1815, and then by that land to the place of beginning, in fact described and could convey nothing, much less any portion of lot 93. But the defendant contended that, notwithstanding the deed of 1815, that of 1819 might convey a portion of lot 93, situate northeasterly of the land conveyed to James White, by the deed of May 20, 1815; or if this could not be so, that, notwithstanding the language of the deed of 1819, it might be construed to reconvey from James to David White a portion of lot 93, which David had conveyed to James in 1815, being, as the defendant claimed, the place of the alleged trespass, set forth in the plaintiff's writ. For the purposes of the

trial the court sustained the defendant's position as to this latter construction of the deed of February 8, 1819, unless the jury should find, from the evidence, that in 1815 the two Whites and Dea. James Robinson had established the line between lots 93 and 95, so as to exclude the possibility of such a construction, but ruled against the defendant's first position.

The southerly line of lots 93 and 95 was a range line, and the principal dispute between the parties was whether the common corner of the two lots was at one point on this range line, or another. These points were about four and a half rods apart. If the point claimed by the plaintiff were the common corner of the two lots, the *locus in quo* would be part of lot 95; while, if that claimed by the defendant were the common corner, the *locus* would be part of lot 93.

The plaintiff offered evidence tending to show that May 20, 1815, when the two Whites divided lot 93 between themselves, there being some dispute between them and Dea. James Robinson where the common corner of the two lots was, Robinson claiming the corner now claimed by the plaintiff, and the two Whites that now claimed by the defendant, Robinson was notified, and attended for the purpose of establishing the corner; that, after considerable discussion, it was finally agreed by Robinson and the two Whites that the three gentlemen who had been selected by the Whites to divide the land in lot 93 between them, one of whom was a surveyor, should determine and establish the corner between lots 93 and 95, and that thereupon those three gentlemen, in the presence and with the assent of the two Whites and Robinson, did determine and establish the corner then claimed by Robinson, and now claimed by the plaintiff, as the true corner of lots 93 and 95, and the line was run and lot 93 divided between the Whites in accordance with this determination.

The defendant offered evidence tending to show that the corner to which he claimed, and a line running therefrom, were the true corner and division line between lots 93 and 95.

[The other facts stated in the case transferred are not important in the view which the court have taken of the questions determining the rights of the parties, and are therefore omitted.]

A verdict having been rendered for the plaintiff, the defendant moved for a new trial, on account of the erroneous rulings of the court.

*George & Foster,* for the plaintiff.

*L. T. Flint* and *William H. Bartlett,* for the defendant.

FOWLER, J.   In the view which the court have felt obliged to take of the rights of the parties in this suit, and the foundations upon which they rest, most of the questions raised upon the trial, as well as those discussed in the arguments of the defendant's counsel, are entirely unimportant and immaterial.

The case finds that the plaintiff owned the whole of lot 95, was in possession of the *locus,* and owned also the whole of lot 93, unless the *locus* belonged to that lot, and the title thereto was in the defendant.   The defendant claimed title to the *locus* only by descent, and through intermediate conveyances from the heirs of David White, whose title rested upon the deed from James White to himself, dated February 8, 1819.   Now, if this deed conferred no title to the *locus* upon David White, it necessarily follows that the defendant had no title thereto, and the plaintiff, being in possession, was entitled to maintain his action.   This seems to us to have been the exact condition of things, as shown at the trial and found by the case.

Before May 20, 1815, David and James White owned lot 93 in common. On that day it was divided between them, and David quitclaimed to James all the northeastern portion of the lot, bounding him all the distance on the northeastern side by the southwesterly side line of lot 95, then owned and possessed by Dea. James Robinson. Whatever may have been done by the parties at the time of this partition, in relation to the establishment of the division line between lots 93 and 95, the legal effect and operation of the deed from David to James White, May 20, 1815, was to vest in James White the entire interest of David, and the complete and perfect title to the whole northeastern half of lot 93 up to the southwesterly line of lot 95. *Sanborn* v. *Clough*, 40 N. H. 316. There remained no portion of that lot on the northeasterly side thereof in common and undivided between them. David White and his heirs were estopped by this deed from afterward claiming any thing in those premises. *Jackson* v. *Hasbrouck*, 3 Johns. 331.

When, therefore, on the 8th day of February, 1819, James White undertook to quitclaim to David a tract of land on the northeasterly side of what David had previously quitclaimed to him, and outside of the same, he evidently undertook to quitclaim to him a portion of lot 95, because the whole of lot 93 upon that side belonged to himself. But James White had no pretence whatever of any title beyond lot 93, and outside of the premises conveyed to himself by David, May 20, 1815, and, therefore, his quitclaim deed of land beyond his own boundaries could not give to his grantee the slightest pretence of title thereto.

It has been said in the argument, and was ruled at the trial, that the deed of 1819 might be so construed as to reconvey, from James to David White, a portion of the premises which David had conveyed to James in 1815. We do not think this can possibly be done, consistently

with the well established rules of interpretation and construction.

The words, "at a stake and stones at the southwest corner, it being the northeast corner of land that David White deeded to James White on the 20th May, 1815," have a known and definite meaning, and can only be interpreted as indicating that the southwest corner of the premises intended to be granted was identical with the northeast corner of the land conveyed by David to James White in 1815; and when it appears that this northeast corner was the southwest corner of lot 95, or James Robinson's lot, it is quite apparent that the intention was, and the operation of the deed, if it had any, must have been, to grant land lying northeasterly of the southwest corner of lot 95, which of course must be land within the limits of lot 95, to which the grantor confessedly had no title.

Beside, the southwesterly side line of the premises granted by the deed of 1819 is described as running "by the land the said David deeded to the said James White" by the deed of May 20, 1815. These words, too, have a fixed and definite meaning. "By" does not mean "over," or "across," but "along the line of" the tract of land conveyed by David to James White, and such is both its legal and common acceptation. *Peaslee* v. *Gee*, 19 N. H. 273.

It seems to us entirely clear, therefore, that the deed of 1819 cannot rightfully be construed to convey any thing whatever from James to David White, because it in fact and in truth describes nothing. For the northeasterly side line of the premises described in the deed of 1819 is defined as running "by said widow Robinson's land," and the case finds that in 1819 the widow of James Robinson was in possession of lot 95; so that, by reference to the deed of 1815, we find that the northeasterly side line of the premises described in the deed of 1819 is identical with the southwesterly side line thereof; for the south-

westerly side line of widow Robinson's land is the south-westerly side line of James Robinson's land in 1815, and that is identically the same with the northeasterly side line of the land conveyed by David to James White in 1815, because the deed of 1815 bounds James White all the way on the northeasterly side by the land of Dea. James Robinson.

So, too, the southwest corner of the premises under-taken to be conveyed by the deed of 1819, being the northeast corner of the land conveyed by David to James White in 1815, and that northeast corner being fixed by the deed of 1815 as James Robinson's southwest corner, and the identity of the land of widow Robinson in 1819 with that of Dea. James Robinson in 1815 being found by the case, it follows inevitably that, when the deed of 1819 starts from the northeast corner of land conveyed by David to James White in 1815, and then runs north-east about six rods to the southwest corner of widow Robinson's land, the point at which it commences and at which it terminates being one and the same, the familiar and almost elementary principle, that courses and dis-tances and computed contents are to be controlled by monuments, being applied, no line whatever is described as the southeastern boundary line of the premises intended to be conveyed, and the side lines having already been shown to be identically one and the same line, the deed of 1809, although it purports to convey a tract of land of one hundred and thirty square rods, describes and can convey nothing whatever, but must be regarded as wholly inoperative and void. *Pernam* v. *Weed*, 6 Mass. 131; *Howe* v. *Bass*, 2 Mass. 380; *Folger* v. *Mitchell*, 3 Pick. 401; *Brimmer* v. *Proprietors of Long Wharf*, 5 Pick. 135; *Smith* v. *Dodge*, 2 N. H. 303; *Jackson* v. *Ives*, 9 Cow. 661; *Doe* v. *Thompson*, 5 Cow. 371; *Purinton* v. *Sedgely*, 4 Gr. 286; *Call* v. *Barker*, 3 Fairf. 325; *Belden* v. *Seymour*, 8 Conn. 19.

The result at which we have arrived, therefore, is, that as matter of law, under the circumstances of the case, the defendant had, and could have, no title to the place of the alleged trespass, and the plaintiff, being in possession, was entitled to maintain his action to recover the value of the wood and timber taken therefrom by the defendant; while the trial in the court below was the result of an erroneous ruling in favor of the defendant, of which he cannot complain.

In arriving at this conclusion, we have not failed to notice the numerous cases in this State and elsewhere, in which it has been substantially held that, if the land intended to be conveyed by a deed is apparent, any part of the description which is false or mistaken may be rejected, in order to effectuate the intention of the parties to the instrument. *Harvey* v. *Mitchell*, 21 N. H. 575, and authorities cited. There can be no doubt of the correctness and propriety of the principle illustrated by those decisions, but it has no possible application to the case before us. All the facts and circumstances found by the case, and disclosed upon the trial, show most clearly that those portions of the description in the deed of 1819 which the defendant asked to have rejected, were neither false nor mistaken, but exactly what both parties understood and intended to be the essential and decisive limitations of the boundaries of the territory described and intended to be conveyed in and by that deed. It is, we think, abundantly evident, that the parties to the deed of 1819 did not intend thereby, one to make, or the other to receive, a re-conveyance of any portion of the land conveyed by David to James White by the deed of 1815; and to reject those portions of the description in the deed of 1819 which go conclusively to locate the premises therein described northeasterly and outside of the tract included in the former conveyance, instead of carrying out the manifest purpose and true intention of the parties,

would operate completely to nullify that purpose and defeat that intention, and make the parties accomplish by the conveyance precisely what they did not design or intend.

The exceptions taken to the judgment rendered for the plaintiff upon the verdict of the jury, must accordingly be overruled.

*Exceptions overruled.*