## WILLIAM SIMONDS Junior *et al. versus* HORACE HEARD *et al.*

Where a committee was chosen by a town to rebuild a bridge which the town was bound to maintain, it was *held*, that the members of such committee were not to be deemed *public* agents, but were subject to the same rules in regard to personal liability on their contracts made for that purpose, as other agents.

It was *held* also, that such committee was authorized to make contracts with third persons for the construction of the bridge, binding the town to pay therefor, although the town had appropriated money for the purpose of rebuilding it, and empowered the committee to borrow, on the credit of the town, such sums as might be required.

If an agent engages, expressly, in his own name to pay a sum of money or perform other obligations, he is personally responsible on such engagement, although he describe himself as agent, and be duly authorized by the principal to enter into such engagement on his behalf, and although he might have avoided such personal liability by acting in the name of the principal.

Thus, where a committee chosen by a town to rebuild a bridge, entered into a contract, not under seal, for that purpose, in which, after describing themselves as a committee of such town, " *said committee* " agreed to pay the contractor a certain sum when the work should be completed, it was *held*, that the members of the committee were personally responsible on such contract.

It *seems*, that in an action upon such contract, against the members of the committee, personally, the acts and declarations of the contractor, tending to show that credit was given by him to the town, are admissible in evidence.

THIS was assumpsit upon a contract in writing, dated May 4th, 1837, between the plaintiffs and the defendants, for the

construction of the abutments of a bridge by the plaintiffs. The trial was before *Dewey* J.

The introductory part of the contract was in the following words : " Agreement between Horace Heard, Eli Sherman and Newell Heard, [the defendants,] committee of the town of Wayland, on the one part, and William Simonds and John Chaplin, [the plaintiffs,] on the other part ; " and after a specific description of the work to be done, the contract proceeded as follows : " Said Simonds and Chaplin hereby warrant the above walls to stand firmly and in good order for one year from the completing of the same, and are to take as much of the old bridge as they need for platform for said walls and also all the wall near there. Said committee are to pay said Simonds and Chaplin the sum of three hundred and seventy-five dollars, when said work is completed, provided said Simonds and Chaplin give a sufficient bond with sureties for the warranty as expressed within." The contract was signed by the defendants with their own names, simply, and by the plaintiffs.

The defendants rested their defence on two grounds : 1. That they were not personally liable, and that the cause of action, if any existed, was against the town of Wayland ; and 2. That the plaintiffs had not performed the contract on their part, so as to entitle them to recover the money claimed, either of the defendants or of the town.

Upon the first point, it was proved, by the defendants, that at a meeting of the inhabitants of the town on the 4th of April, 1836, the defendants were chosen a committee to rebuild the bridge ; that at another meeting of the inhabitants on the 3d of April, 1837, it was voted to raise the sum of $400 for the purpose of rebuilding the bridge in question, and that the committee should have power to borrow on the credit of the town such sums of money as they might need ; and that on the 1st of April, 1839, it was voted that the contract in question, was agreeable to the authority given to the committee by the vote appointing them such. The defendants also introduced in evidence a bond, by which the plaintiffs acknowledged themselves to be bound to the defendants, who were styled a committee of the town of Wayland, in the sum of $500, to be paid to them, *their heirs and assigns*, the condition of the bond being

in conformity with the provisions of the contract which was the subject of the action.

The defendants also introduced as a witness, Jotham Bullard, who testified, that at an auction of certain property of the town on the 4th of April, 1838, Simonds purchased a yoke of oxen, and that upon being requested to procure a surety on his note for the price, he replied, that the town owed him a great deal more than such price, for work done on the bridge in question.

Abel Gleason testified, that Simonds inquired of him, supposing him to be an overseer of the poor of the town, if, in case he bought a yoke of oxen at such sale, the price might be turned towards the debt due for the bridge.

It was admitted, that the town were required by law to re build the bridge at the time when it was rebuilt by the plain tiffs ; and no evidence was offered to show, that the town was indebted to either of the plaintiffs unless it was for their services under the contract in question.

The plaintiffs objected to the admission of all the testimony offered by the defendants on this point.

For the purposes of the trial, and with the intention of re serving this question for the consideration of the whole Court, it was ruled, that the action might be maintained against the defendants, if the plaintiffs had performed the contract on their part ; and the only question submitted to the jury was upon the second point. The jury returned a verdict for the plaintiffs

If the Court should be of opinion, upon so much of the evidence as was legally admissible, that it would have been competent for the jury to find a verdict for the defendants, a new trial was to be ordered ; otherwise, judgment was to be rendered on the verdict.

*Oct. 17th.* *Mellen,* for the defendants, to the point, that they had au thority from the town to make the contract in question, cited *Damon* v. *Granby,* 2 Pick. 345 ; that if the contract was not on its face the contract of the town, parol evidence was admissible to show that the defendants acted merely as agents of the town, and that, as such, they were not personally liable, Angell & Ames on Corp. 168, 170 ; *Mechanics Bank* v. *Bank of Columbia,* 5 Wheat. 326, 337 ; *Emerson* v *Prov. Ha.*

*Manuf. Co.* 12 Mass. R. 237 ; *Stackpole* v. *Arnold*, 11 Mass.
R. 34 ; *Mott* v. *Hicks*, 1 Cowen, 513, 536 ; *Ontario Bank*
v. *Hallett*, 8 Cowen, 191 ; *Randall* v. *Van Vechten*, 19 Johns.
R. 60 ; *Dawes* v. *Jackson*, 9 Mass. R. 490 ; *Dubois* v. *Dela-
ware & Hudson Canal Co.* 4 Wendell, 285 ; *Brockway* v.
*Allen*, 17 Wendell, 40 ; *Bank of Columbia* v. *Patterson*, 7
Cranch, 306 ; that the defendants, being *public* agents, were
not responsible personally upon a contract made by them in
that capacity, *Dawes* v. *Jackson*, 9 Mass. R. 490 ; *Bainbridge*
v. *Downie*, 6 Mass. R. 253 ; *Macbeath* v. *Haldimand*, 1 T.
R. 172 ; *Bowen* v. *Morris*, 2 Taunt. 387 ; *Unwin* v. *Wolse-
ley*, 1 T. R. 674 ; *Brown* v. *Austin*, 1 Mass. R. 208 ; *Hodg-
son* v. *Dexter*, 1 Cranch, 345.

*Hoar*, *T. Bigelow* and *G. T. Bigelow*, for the plaintiffs,
cited to the point, that the defendants were personally liable,
Story on Agency, § 154, 155, 269, 273 ; *Barker* v. *Mechan-
ics F. Ins. Co.* 3 Wendell, 94 ; *Jones* v. *Littledale*, 6 Adolph.
& Ellis, 486 ; *Norton* v. *Herron*, 1 Carr. & Payne, 648 ;
*Leadbitter* v. *Farrow*, 5 Maule & Selw. 345 ; Bayley on Bills,
c. 2 § 7 ; *Eaton* v. *Bell*, 5 Barn. & Ald. 34 ; *Childs* v. *Mo-
nins*, 2 Brod. & Bingh. 460 ; *Burrell* v. *Jones*, 3 Barn. & Ald.
47 ; *Hills* v. *Bannister*, 8 Cowen, 31 ; Chitty on Contr. (4th
Am. ed.) 184 ; *Appleton* v. *Binks*, 5 East, 148 ; *White* v.
*Skinner*, 13 Johns. R. 307 ; *Tippets* v. *Walker*, 4 Mass. R.
595 ; *Forster* v. *Fuller*, 6 Mass. R. 58 ; *Andrews* v. *Estes*, 2
Fairfield, 267 ; 2 Kent's Comm. 493 ; *Stone* v. *Wood*, 7
Cowen, 453 ; *Hartwell* v. *Littleton*, 13 Pick. 233 ; *Hodgson*
v. *Dexter*, 1 Cranch, 345 ; that the defendants being authorized
to borrow money on the credit of the town, had no power to
bind the town by a contract like that in question, *Banorgee* v.
*Hovey*, 5 Mass. R. 37 ; *Kupfer* v. *South Parish in Augusta*,
12 Mass. R. 189 ; Paley on Princ. & Agent, 137 *et seq.*; and
that the declarations of the plaintiffs, being made long after the
contract was entered into, were not admissible in evidence,
*Rossiter* v. *Rossiter*, 8 Wendell, 494.

SHAW C. J. afterward drew up the opinion of the Court.
Two points were made for the defendants in the present case ;
first, that the defendants, having acted as a committee of the
town of Wayland, in making the contract with the plaintiffs,

and that, in relation to the erection of a bridge, in which they had no personal concern, but which was the concern of the town, and being duly authorized by the town to act in their behalf, were not personably liable to an action on the contract ; and secondly, that the work had not been executed according to the contract.

The latter was submitted to the jury as a question of fact, who found for the plaintiffs, that the contract had been duly executed on their part.

The other is a question of law and turns upon the construction of the contract, which is set forth in the case. It has been fully argued, and many authorities are cited on both sides.

The question, whether a contract made by persons acting or professing to act, as agents for others, binds their principals, or themselves, or both, is often one of great difficulty. The cases run so closely into each other, that whether a particular contract falls within one or the other of these lines, it is not easy to determine.

Some rules are well settled ; as, where an agent acts within the scope of his authority, and professes to act in the name and behalf of his principal, he is not personally liable. So, one standing and acting in a public capacity, who makes a contract in behalf of the public, is not personally liable. *Macbeath* v. *Haldimand*, 1 T. R. 172 ; *Hodgson* v. *Dexter*, 1 Cranch, 345 ; *Freeman* v. *Otis*, 9 Mass. R. 271. But this rule is not applicable to the present case, it not being a contract in behalf of the public, but, at most, of a corporation capable of making contracts and liable to an action on its contracts.

It was contended, that the defendants did not act within the scope of their authority, because inasmuch as the town, by appropriating money, and empowering them to borrow money on the credit of the town, had furnished them the means of performing the duty authorized, there was no necessity for binding the town by a contract. But we are of opinion, that the votes of the town appointing them a committee to rebuild the bridge, which the town, in its corporate capacity, was under obligation to rebuild, carried with them an implied author-

ity to make the necessary contracts for that purpose. *Damon v. Granby*, 2 Pick. 345. We think also that it is manifest, from the subject matter of the contract, and from their describing themselves as a committee, that they were acting under some authority from the town.

But without going into all the distinctions on this very prolific subject, there is one rule, well established by authorities, and defined with a good degree of certainty, which is applicable to this case. It is this, that although an agent is duly authorized, and although he might avoid personal liability by acting in the name and behalf of his principal, still, if by the terms of his contract he binds himself personally, and engages expressly in his own name to pay, or perform other obligations, he is responsible, though he describe himself as agent. *Appleton v. Binks*, 5 East, 148 ; *Tippets v. Walker*, 4 Mass. R. 595 ; *Duvall v. Craig*, 2 Wheaton, 56 ; *Stone v. Wood*, 7 Cowen, 453. These are cases of specialty, in which perhaps some more exactness in the mode of execution is necessary, in order to bind the principal, and exempt the agent ; but the same principle is held to apply in cases of simple contract, when, from the relation in which the party stands, or from the terms of the contract itself, it is obvious, that the agent intended to become personally responsible. *Forster v. Fuller*, 6 Mass. R. 58. Where one, as president of an incorporated company, having authority to make notes, signed a promissory note by which he promised to pay, it was held that he was liable, upon the personal engagement and promise to pay, though he described himself as president of such company, and that it was not the note of the company. *Barker v. Mechanics Bank*, 3 Wendell, 94. A known agent of a country bank, drawing a bill and directing the drawees to place the amount to the account of such bank, was held personally liable. *Leadbitter v. Farrow*, 5 Maule & Selw. 34. In a more recent case, where the solicitors to the assignees of a bankrupt, gave an agreement to this effect, " We, as solicitors, &c. do hereby undertake to pay," it was held, that they were personally bound. *Burrell v. Jones*, 3 Barn. & Ald. 47. In this case Mr. Justice *Bayley* says, " it is clear, that an agent may so contract, as to make himself personally

11 *

liable, and I think the words here used, 'we undertake,' are sufficient to place the defendants in that situation." *Norton v. Herron*, 1 Carr. & Payne, 648; *Eaton v. Bell*, 5 Barn. & Ald. 34.

In examining this contract, the Court are of opinion, that it falls clearly within this rule. The introductory part is an agreement, " between Horace Heard, Eli Sherman and Newell Heard, committee of the town of Wayland, on the one part, and William Simonds and John Chapin, on the other part ; " and after a specific description of the work to be done, the contract on the part of the defendants is this ; " Said committee are to pay said Simonds and Chapin the sum of three hundred and seventy-five dollars, when said work is completed," &c.

Two things are here observable. The first is, that they do not profess to act in the name or behalf of the town, otherwise than as such an intention may be implied from describing themselves as a committee. But such description, although it may have some weight, is far from being conclusive, and in many of the cases cited, a similar designation was used, which was held to be a mere *descriptio personarum*, and designed to show for whose account the contract was made, and to whose account the amount paid under such contract should be charged. The second and more decisive circumstance respecting this contract is, that here is an express undertaking on the part of the committee to pay. " Said committee are to pay said Simonds and Chapin," &c. Having described themselves as a committee, this undertaking is as strong and direct as if the names had been repeated, and Heard, Sherman, and Heard, had promised to pay.

The Court are therefore of opinion, that by the terms of this contract, the committee intended to bind themselves, and did become personally responsible, and that the action is well brought against them. Nor is it to be considered very improbable, that they should intend thus to contract personally, if, indeed, the subject was distinctly presented to their minds. Being furnished by the town with ample means to meet any engagement they might enter into, to an amount beyond the payments to be made by this contract, such personal respon-

sibility would be considered as subjecting them to very little risk.

The subsequent vote of the town passed after this action was brought, can have no effect upon the present question, of the personal liability of the defendants upon this contract when it was made and executed.

On the other point, the admissibility of the evidence tending to show that the plaintiffs considered the town as their debtors, the objection came from the plaintiffs, and therefore, as the other question is now decided, this point is immaterial. But as some argument was had on the effect of that evidence, it may be proper to make a remark respecting it.

We think the evidence was competent, being the acts and declarations of the plaintiffs, tending to show to whom the credit was given. But we think, as the case stood, it was entitled to no weight. The question was, whether by the contract the defendants were personally liable. The plaintiffs' admission tended to show, that the plaintiffs knew that the work was done under the authority of the town, in pursuance of a corporate duty, and that the work was ultimately to be paid for, out of the funds of the town. A desire and an attempt to get their pay directly of the town, by a purchase of town property and a set-off, proved nothing more than the same knowledge and understanding on their part. But their knowledge that the work was done for the town, and was ultimately to be paid for by them, was perfectly consistent with the fact, that they had the personal obligation of the committee to pay them for it. The same facts appeared on the contract itself. The evidence, therefore, had no tendency to explain or illustrate the contract in this particular, or to give effect or meaning to its terms. The jury, therefore, ought not to be influenced by it.

*Judgment on the verdict for the plaintiffs*